Shawn M. Lindsay
shawn@jurislawyer.com
JurisLaw LLP
Three Centerpointe Drive, Suite 160
Lake Oswego, OR 97035
Telephone: (503) 968-1475

*Attorney for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KATERINA B. EYRE, TIM FREEMAN, MAZAMA SPORTING GOODS, NATIONAL SHOOTING SPORTS FOUNDATION, and OREGON STATE SHOOTING ASSOCIATION,<br><br>            Plaintiffs,<br><br>   v.<br><br>ELLEN F. ROSENBLUM, Attorney General of Oregon, and TERRI DAVIE, Superintendent of the Oregon State Police,<br><br>            Defendants. | Case No. 3:22-cv-01862-IM<br><br>**DECLARATION OF JASON MYERS** |

DECLARATION OF JASON MYERS       1

I, Jason Myers, declare and state the following.

1. I am a resident of Stayton, Oregon, am over 18 years of age, and have personal knowledge of the matters stated herein.

2. I am a retired Sheriff of Marion County Oregon and currently serve as the Executive Director of the Oregon State Sheriff's Association ("OSSA"), and am authorized to speak and testify on its behalf.

3. The OSSA is a 501(c)(3) nonprofit corporation, dedicated to supporting Oregon Sheriffs and Sheriff's Offices. It has operated in Oregon since 1916. OSSA provides a substantial portion of the training for Sheriff's Office personnel statewide as well as represents and advocates on behalf of Oregon Sheriffs. The OSSA Board of Directors consists of Oregon's 36 elected Sheriffs.

4. Measure 114 makes each Sheriff's Office and each municipal police agency a "permit agent" for their respective jurisdictions.

5. At this time, OSSA is working with the Oregon State Police ("OSP") to create a permit-to-purchase system that meets Measure 114's requirements. But there is currently no system in place, and therefore no permits to purchase can be issued.

6. OSP has advised OSSA that OSP has no electronic infrastructure to implement the Measure 114's permit program, and it will therefore be a paper-heavy process until that infrastructure can be created and implemented. A paper process will require permit agents to mail or courier applications to OSP, which will be time consuming and cause delays in issuing permits.

7. OSP was tasked with a number of mandates by Measure 114 without any funding, additional staffing, or clear guidance, and they are working diligently to create a workable system. To that end, OSP provided OSSA with a draft permit process flowchart and a draft permit application on December 1, 2022. But because process and application were only in draft form, OSSA cannot finalize the permit-agent portion of the process until it knows for certain what OSP will require from permit agents.

8. There are 36 County Sheriff's Offices in Oregon. Each of those Sheriff's Offices issues concealed handgun licenses and most have sufficient personnel to meet current licensing needs. Some Sheriff's Offices are understaffed and have appointments for obtaining a concealed handgun license scheduled out for six months. OSP has estimated that there will be approximately 300,000 permits to purchase that need to be issued in the first year after Measure 114 takes effect. At this time, no Sheriff's Office has sufficient staffing or resources to handle that extra workload. OSSA provided a cost estimate to the State financial committee responsible for calculating the fiscal impact of the measure. OSSA estimated that it would cost approximately 50 million dollars the first year for local governments to implement and operate the permit agent scheme, which included personnel, supervision, equipment and software to successfully manage the system.

9. Measure 114 placed a substantial amount of work on all law enforcement agencies but came with very little direction, no funding, and no additional staffing.

10. Measure 114 also requires permit-to-purchase applicants to provide proof of very specific training requirements that can be done online and through a live demonstration. The training requires that an applicant prove (1) they have been trained on both state and federal laws related to purchase, ownership, transfer, use and transportation of firearms; (2) that they have been trained on federal and state laws related to safe storage of firearms including reporting of lost and stolen guns; (3) that they have been trained in preventing the abuse or misuse of firearms, including the impact of homicide and suicide on families, communities and the country as a whole; and (4) that they are able to lock, load, unload, fire, and store a firearm before an instructor certified by a law enforcement agency. The first three requirements can be done online, but the fourth must be done in person. Measure 114 also allows an applicant to show proof of a completed course taken to get a concealed handgun license, provided that the course covers all four of the required components. OSSA is aware of no course in Oregon that has covered all these specific training requirements.

11. OSSA does not believe that anyone in the state will be able to certify that they have received training on each of these very specific subjects at this time. OSSA and others currently provide the training required to get a concealed handgun license, but none address all these topics. At this time, OSSA is working on the development of a training course to meet Measure 114's requirements, but is not aware of any training program that is currently available and meets all of Measure 114's strict requirements. OSSA has commissioned a workgroup to make recommendations about how to implement the training requirements, including how to accommodate persons with disabilities who still must demonstrate that they can complete the physical tasks with a firearm before they can receive a permit. Because it is unlikely that anyone can provide certification of training on these specific requirements, every person, including law enforcement officers wishing to obtain a permit, will first have to complete training that does not yet exist. Law enforcement agencies must also certify firearms training courses that are offered by community colleges, public or private institutions or firearms training schools. Law enforcement is also tasked with certifying the instructors. At present, there are no guidelines or processes to determine the criteria for either certification, and those will need to be created.

12. At this time, OSSA believes that there is no way an operational permit system will be in place by December 8th, and our best guess is that an operational permit system is at least another month away at a minimum. No Sheriff's Office will be in a position to accept an application for a purchase permit by the time Measure 114 takes effect. And even if the infrastructure was in place, no applicant will be able to apply for a purchase permit by December 8, 2022, because the training required to apply for a purchase permit does not yet exist.

13. Even if there were appropriate training programs available and both the OSP and permit agent processes were clear, there is no realistic way that a Sheriff's Office has the staff or resources to handle the expected volume of purchase permit applications, which will result in substantial delays. Once the permit process is available, given the finite resources of Oregon law enforcement agencies and the lack of electronic systems to expedite the process, we expect that the number of permits processed in the first months will be very low. We believe that it will take many months before the permit system will be able to process permits at a rate which will meet demand.

14. The permit to purchase process is duplicative of the current background checks required by Oregon law. Under current law, a person wishing to purchase a firearm must provide a thumbprint and undergo a complete criminal history check with OSP before the transfer of the firearm takes place. That is true for all sales by a dealer as well as sales at a gun show, and almost all private transfers are also required to go through this process pursuant to ORS 166.435. There are some narrow exceptions in ORS 166.435(4). The Measure 114 permit process requires a person wishing to purchase a firearm to first apply for a permit with a local law enforcement agency, which includes a background check by the permit agent, a full set of fingerprints and a full criminal history check through OSP. If the person is approved for a permit, when they actually go to purchase a firearm, they must go through the current OSP criminal history check again before the dealer can transfer the firearm, even if they wish to purchase a firearm immediately after obtaining the purchase permit.

15. Under current federal law, if a background check is not completed within three days, the dealer can legally transfer the firearm to a purchaser. 18 U.S.C. § 922(t). Under Oregon law, if OSP does not provide a gun dealer with either an approval of the transfer and a unique approval number or notification that the purchaser is disqualified before the close of the dealer's next business day, the gun dealer may deliver the firearm. ORS 166.412(3)(c). Under the new purchase permit process, there is no time limit on how long OSP can take with the criminal history check, and an applicant for a purchase permit could be waiting for an indefinite period of time.

16. I make these statements in support of the Plaintiffs' motion to preliminary enjoin Measure 114.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated this 2nd day of December 2022.

_____
Jason Myers

DECLARATION OF JASON MYERS        4