**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Hannah K. Hoffman, OSB #183641**
HannahHoffman@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201-3412
(503) 295-3085

    Special Assistant Attorneys General for Defendants
    Additional Counsel of Record Listed on Signature Page

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| KATERINA B. EYRE, TIM FREEMAN, MAZAMA SPORTING GOODS, NATIONAL SHOOTING SPORTS FOUNDATION, and OREGON STATE SHOOTING ASSOCIATION<br><br>                        Plaintiffs,<br><br>        v.<br><br>ELLEN ROSENBLUM, Attorney General of Oregon, and TERRI DAVIE, Superintendent of the Oregon State Police,<br><br>                        Defendants. | Case No. 3:22-cv-01862-IM<br><br>**JOINT STATUS REPORT** |

Page 1 -   JOINT STATUS REPORT

I.      **This Court's Stay of Enforcement of the Permit-to-Purchase Requirement**

The parties agree that this Court's stay of the enforcement of Measure 114's permit-to-purchase requirement should be extended to 11:59 p.m. on **March 7, 2023**. The parties disagree about the terms of that order.

**Plaintiffs' position:**

After the Court held oral argument on the Plaintiffs' motions for temporary restraining orders, "Defendants submitted a letter to this Court … ask[ing] this Court to postpone implementation of Measure 114's permit requirements" in light of what the State has described as "challenges" with implementation. That is what the Court did. In its December 6 Opinion and Order ("Order"), the Court ordered that, "in light of the difficulty the State has conceded in terms of implementation of the permitting provisions [of Measure 114] at this stage, implementation of those permitting provisions is stayed for thirty days." Order 4, 43.

Defendants now seek to narrow the scope of that stay by asking for permission to allow one core component of Measure 114's new permit-to-purchase provision to take effect. Specifically, Defendants want to carve out from the stay Measure 114's novel across-the-board prohibition against licensed gun dealers transferring a firearm to law-abiding citizens unless and until the dealer receives a unique approval number from the Oregon State Police, no matter how long that may take. *See* Measure 114 §(6)(3)(c) (amending ORS 166.412(3)(c)). The Court should deny Defendants' request.

Prior to Measure 114, ORS 166.412(3)(c) provided as follows: "If the department fails to provide a unique approval number to a gun dealer or to notify the gun dealer that the purchaser is disqualified … before the close of the gun dealer's next business day following the request by the gun dealer for a criminal history record check, the gun dealer may deliver the firearm to the

Page 2 -   JOINT STATUS REPORT

purchaser." Measure 114 deletes that provision and replaces it with the following provision: "The dealer may not transfer the firearm unless the dealer receives a unique approval number from the department and, within 48 hours of completing the transfer, the dealer shall notify the state that the transfer to the permit holder was completed." Measure 114 §6(3)(c). Measure 114 §6(13)(b), §6(14), and §8(3)(B)(C) then go on to underscore that criminal liability can be imposed if a dealer transfers a firearm without "hav[ing] received a unique approval number from the department indicating successful completion of the background check."

If these provisions—which Plaintiffs challenged in their pleadings as part and parcel of the new permit-to-purchase regime and argued would frustrate law-abiding citizens' ability to purchase or acquire a firearm if allowed to take effect, *see, e.g.*, *Eyre* Compl. ¶¶ 7, 36, 67; *Eyre* Emergency PI Mot. 10—are not stayed alongside the rest of Measure 114's permitting provisions, law-abiding Oregonians' Second Amendment rights will be delayed, if not denied. To be sure, dealers rarely deliver firearms to purchasers without first receiving a unique approval number. But some dealers may and do release firearms, prior to receiving a unique approval number, to purchasers who hold duly issued Certified Handgun Licenses ("CHLs"), because such purchasers have undergone additional and advanced background checks to obtain such licenses. Indeed, prior to December 12, 2022, the Oregon State Police processed background checks of CHL holders at an expedited pace through the Firearms Instant Check System ("FICS"). Effective December 12, 2022, however, the Oregon State Police unilaterally changed its policy, and will now process CHL background checks in the order they are received, instead of as expedited. The practical effect of this new policy is, because there are fewer instantaneous approvals for CHL holders, the FICS queue is becoming larger, and approvals are going down. Further, because approximately 20 percent of dealers' FICS submissions were approved

Page 3 -   JOINT STATUS REPORT

instantaneously before Measure 114 took effect, the delay means that licensed dealers, including some Plaintiffs, are now losing sales.

Defendants contend below that this Court should not stay enforcement of these provisions for two reasons; neither reason withstands scrutiny. Defendants first assert that Section 6 of Measure 114 is "not related to the Measure's permit-to-purchase requirements." That contention is contradicted by the text of Measure 114 itself. The title of Section 6 is "<u>REQUIRES PERMITS FOR LICENSED DEALER SALES</u>." And the amendments to that Section *specifically refer back to* the amendments to Section 4 (titled "<u>PERMIT-TO-PURCHASE PROCESS</u>"), which establishes the basics of the permit-to-purchase regime. *See* §6(2)(a), (d). That is why Plaintiffs challenged these amendments to Section 6 as part and parcel of the new permit-to-purchase regime. *See, e.g.*, *Eyre* Compl. ¶¶ 7, 36, 67; *Azzopardi* Compl. ¶¶ 16, 22; *Eyre* Emergency PI Mot. 10.

Defendants next try to repackage these amendments as mere tweaks to the pre-114 background check requirements. But changing the law from allowing firearm transfers without a unique approval number if one business day passed from the time of the request to DSP, to making it a crime to transfer a firearm until DSP generates a unique identification number and the individual secures a permit-to-purchase, is no minor tweak—especially since, as Plaintiffs have alleged at length, Measure 114 places no time limits on DSP whatsoever, which means that a law-abiding citizen may have to wait interminably just to exercise the most basic aspect of a fundamental constitutional right. This is a sea change in the scope of the State's infringement on law-abiding citizens' right to bear arms.

Finally, Defendants contend that "Plaintiffs have asserted no claims that these amendments are unconstitutional" and "have made no factual allegations in their pleadings

Page 4 -   JOINT STATUS REPORT

regarding the amendments." That is incorrect, as explained above. *See, e.g.*, *Eyre* Compl. ¶¶ 7, 36, 67; *Azzopardi* Compl. ¶¶16, 22; *Eyre* Emergency PI Mot. 10.

Until this Court is able to fully adjudicate the entirety of the permit portion of Measure 114, the Court should stay the entirety of the permit requirement portion by extending its stay, as is, through March 7, 2023. Accordingly, Plaintiffs respectfully submit that this Court enter an order consistent with the following:

"It is hereby ORDERED that defendants Ellen Rosenblum and Terri Davie are enjoined from enforcing sections 3 through 10 of Measure 114 until March 7, 2023."

**Defendants' and Intervenor-Defendant's position:**

The Court should not enjoin provisions of Measure 114 that Plaintiffs have not asserted claims against and that are not related to the Measure's permit-to-purchase requirements. In addition to establishing a permit requirement and restricting large-capacity magazines, Measure 114 separately amends existing Oregon law requiring background checks for firearms transfers:

- Section 6 amends ORS 166.412. Section 6(3)(c) provides that gun dealers "may not transfer the firearm unless the dealer receives a unique approval number from the" Oregon State Police. Section 6(13)(b) extends civil liability to gun dealers who have "received a unique approval number from the department indicating successful completion of the background check." Section 6(14) makes it a Class A misdemeanor for a gun dealer to "[k]nowingly sell[] or deliver[] a firearm . . . prior to receiving a unique approval number from the department based on the criminal background check[.]"
- Section 7 amends ORS 166.435. Section 7(3)(d)(B) provides that gun dealers may not transfer a firearm to a person if the Oregon State Police are "unable to determine if the transferee is qualified or disqualified from completing the transfer[.]"

Page 5 -   JOINT STATUS REPORT

- Section 8 amends ORS 166.436. Section 8(3)(c) prohibits a firearms transfer at a gun show is "unless the transferor receives a unique approval number" from the Oregon State Police.

None of these amendments are related to Measure 114's permit requirements. Rather, they amend Oregon's existing background check requirement to ensure that prospective transferors of firearms not only request but also receive approval from the Oregon State Police before transferring a firearm.

Plaintiffs have asserted no claims that these amendments are unconstitutional. They have not introduced any evidence regarding the amendments. And the portions of the *Eyre* Plaintiffs' Complaint that address the amendments to Oregon's background check law do so in the context of the alleged burden those amendments would create when *coupled* with the permit requirement, not any burden the amendments create on their own. (*Eyre* Compl., ¶ 7 ("So while Measure 114 requires an individual to present a permit whenever she seeks to acquire a gun, successfully running the gauntlet required to secure one does not actually entitle an individual to purchase a firearm. Even if an individual comes to a licensed gun dealer with a 'permit-to-purchase' in hand, the dealer must take that individual's thumbprint again, §§6(2)(c), 10(a), 11, verify that her permit is, in fact, valid by cross-referencing a state database, §6(2)(d), and, finally, ask DSP to perform another background check and assign a 'unique approval number' if the individual passes, §6(2)(d), which likewise can take an eternity."); *see also Eyre* Emergency Mot. for Prelim. Injunction at 10). As such, the Court lacks authority to enjoin enforcement of the amendments. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636-37 (9th Cir. 2015) (holding that the district court lacks authority to grant injunctive relief absent a "sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint").

Plaintiffs' contention that Measure 114's amendments to Oregon's background check law are "part and parcel of the new permit-to-purchase" regime is incorrect. As Defendants' proposed order staying the permit-to-purchase provisions (Ex. 1) shows, separating the sections of Measure 114 that require permits to transfer firearms from the sections that amend Oregon's existing background check program is straightforward. The sections are distinct, and Oregon can enforce the changes to its background check law without enforcing Measure 114's permit requirement. Plaintiffs have not identified any barriers to such enforcement.

In addition, contrary to Plaintiffs' suggestion, Defendants have not agreed that Measure 114's amendments to Oregon's background check laws should be stayed. Defendants were clear in their December 4 letter that "the Court should enter an order providing a limited window in which Oregonians will be able to purchase firearms *even if they do not have a permit*[.]" (*See, e.g.*, No. 2:22-cv-01815-IM, Dkt. 34.). The amendments to the background check requirements do not involve Measure 114's permit requirement.

Furthermore, even if Plaintiffs had raised challenges to Measure 114's amendments to Oregon's background check requirements, the Court still would have no basis to enjoin those amendments. Plaintiffs have not introduced facts showing that "law-abiding Oregonians' Second Amendment rights will be delayed, if not denied" by the amendments. And, in any event, background check requirements like those that Measure 114 amends are constitutional. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2138 n.9 (2022) (Second Amendment does not limit licensing regimes that require "applicants to undergo a background check . . . designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens.") (quotation marks and citation omitted)).

For these reasons, the Court should enter Defendants' proposed stay (Ex. 1), which addresses only Measure 114's permit requirements. In addition, Defendants understand the Court's current order to bar *enforcement* of the permit-to-purchase requirement, but that it does not enjoin the provisions of Measure 114 that allow permits to be *issued*, nor does it prohibit other administrative preparations for the implementation of the permit-to-purchase requirement.

## II.   Consolidation

As reported at the December 15 status conference, the parties agree that the Court should consolidate the four cases challenging Measure 114 for the purposes of Plaintiffs' preliminary injunction motions, discovery, and other pretrial matters. *See* Fed. R. Civ. P. 42(a); L.R. 42-3. One or more parties may later seek consolidation for trial.

The parties request that the Court enter an order that:

- *Oregon Firearms Federation, et al. v. Brown, et al.*, No. 2:22-cv-01815-IM be designated as the lead case (L.R. 42-4(a));
- the following cases be designated as trailing cases:
    - *Fitz, et al. v. Rosenblum, et al.*, No. 3:22-cv-01859-IM
    - *Eyre, et al. v. Rosenblum, et al.*, No. 3:22-cv-01862-IM
    - *Azzopardi, et al. v. Rosenblum, et al.*, No. 3:22-cv-01869-IM
- all future filings or other docket activities related to any of the cases be filed on the *Oregon Firearms Federation* docket only; and
- the case number and designation of the lead case be listed first in the document title of every document filed in any of these cases.

## III.  Defendants' Report on the Status of the Harney County Circuit Court Case

Defendants update this Court on the state court proceedings in *Arnold v. Brown*, No. 22CV41008 (Harney County Cir. Ct.). The Circuit Court held a hearing on the Plaintiffs'

motion for preliminary injunction on December 13 and issued a letter opinion on December 15. (Ex. 2.)

The Court also entered three orders:

- a temporary restraining order enjoining the permit-to-purchase provisions indefinitely until a hearing to dissolve the order is held within ten days of Defendants' request (Ex. 3);
- a second temporary restraining order preventing enforcement of the background check amendments. The Circuit Court has scheduled a further hearing on December 23 concerning whether its preliminary injunction order should be narrowed to exclude the background check amendments (Measure 114, §§ 6(3)(c), 7(3)(d)(B), and 8(3)(c)) and said it will issue a letter opinion addressing that issue by 5 p.m. on January 3, 2023); and
- a third order preliminarily enjoining the large-capacity magazine provisions. By January 15, the Defendants, who are also defendants in these cases,[1] intend to seek in the Oregon Supreme Court a writ of mandamus instructing the Harney County Circuit Court to dissolve this order.

## IV. Parties' Positions on the Effect of the State Court's Orders

The Court requested the parties' responses to the following question: "Assuming for the sake of argument that Harney County enjoins Measure 114 from going into effect, what impact would that injunction have on a preliminary hearing in federal court, and would that injunction eliminate the irreparable harm that Plaintiffs would suffer based on implementation of Measure 114?"

---

[1] The Attorney General and the Superintendent of the Oregon State Police are named as defendants in the four federal cases and the state case. The Governor is named as a defendant in *Oregon Firearms Federation* and the state case.

**Page 9 -   JOINT STATUS REPORT**

**Plaintiffs' response:**

A state-court preliminary injunction entered in favor of parties not before this Court in any of the four cases would not eliminate the irreparable harm Plaintiffs would suffer based on implementation of Measure 114. Even when a state-court case and federal-court case involve the same plaintiffs, a state-court injunction does not eliminate irreparable harm for federal purposes. That is because of the possibility that the injunction will be dissolved or overturned and the state subsequently prosecutes plaintiffs after the injunction restraining state officials was lifted. *See, e.g.*, *Edgar v. MITE Corp.*, 457 U.S. 624 (1982) (refusing to hold that interim PI relief immunizes a plaintiff from later prosecution if state law is later upheld); *Galvez v. Jaddou*, 52 F.4th 821, 832-33 (9th Cir. 2022) (state defendants' timely adjudication of state court petitions pursuant to federal injunction did not obviate irreparable harm for federal purposes because plaintiffs could face harm in the "future" if defendants were "relieved" of their obligations); *cf. Morales v. TWA*, 504 U.S. 374 (1992) (plaintiff established irreparable injury even though no enforcement actions were pending where repetitive penalties attach to continuing or repeated violations). For this reason, "overlapping injunctions appear to be a common outcome of parallel litigation, rather than a reason for the Court to pass on exercising its duty to determine whether litigants are entitled to relief." *California v. Health & Hum. Servs.*, 390 F. Supp. 3d 1061, 1065-66 (holding "the existence of another injunction—particularly one in a different circuit that could be overturned or limited at any time—does not negate Oregon's claimed irreparable harm").

Recent Ninth Circuit cases bear this principle out. In *Hawaii v. Trump*, 859 F.3d 741 (9th Cir. 2017), the Ninth Circuit adjudicated an appeal of an injunction blocking an executive order even though the Fourth Circuit (in *International Refugee Assistance Project v. Trump*, 857 F.3d 554 (4th Cir. 2017)) had already upheld a nationwide injunction against the same order. And in

*Regents of the University of California v. U.S. Department of Homeland Security*, 908 F.3d 476 (9th Cir. 2018), the Ninth Circuit adjudicated an appeal of an injunction against an executive policy change even though there was a separate nationwide injunction against the same policy issued by a different federal court in *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401 (E.D.N.Y. 2018).

This principle applies *a fortiori* here, moreover, because none of the Plaintiffs before this Court is a party to the state-court litigation, which means that none of them can enforce that injunction in either state court (*see, e.g.*, *Beal v. Gilchrist Timber Co.*, 667 P.2d 575, 577 (Or. Ct. App. 1983) (holding that "the trial court erred in extending [injunctive] relief, with the threat of contempt, for the benefit of others not parties to the action")) or federal court (*see, e.g.*, *City & Cnty. of S.F. v. U.S. Citizenship & Immigration Servs.*, 981 F.3d 742, 763 (9th Cir. 2020) (vacating non-party injunction)).  To be sure, a state-court *permanent* injunction barring enforcement of Measure 114, upheld by the highest court in Oregon, would likely undermine any claim in this Court to imminent harm from enforcement of Measure 114.  But unless and until such a permanent injunction is entered and upheld, Plaintiffs remain under the threat of imminent, irreparable constitutional and economic harm.

**Defendants' response:**

Authorities are split on whether the existence of an injunction in one matter undermines the basis for issuing a substantially similar injunction in another matter.  Some courts have expressed reluctance to issue duplicative injunctions.  *See, e.g., Turner v. Am. Bar Ass'n*, 407 F. Supp. 451, 482 (D. Ala. 1975) (denying motion for injunction where two such injunctions had already been issued in cases assigned to other judges because "[t]his Court cannot see how yet another injunction would serve any useful purpose."); *Breswick & Co. v. Briggs*, 135 F. Supp.

**Page 11 - JOINT STATUS REPORT**

397, 402 (S.D.N.Y. 1955) (where the conduct for which an injunction was sought had already been enjoined in another matter, "there is ... no need for an additional injunction issued in this proceeding."); *Hawai'i v. Trump*, 233 F. Supp. 3d 850, 853 (D. Haw. 2017) (finding plaintiff "will not suffer irreparable damage" from a stay of litigation during the pendency of related appellate proceedings because an injunction in those proceedings already provides plaintiff with the relief it seeks).

But other federal courts have found that injunctive relief may be appropriate when there is some chance that injunctions in other courts could be dissolved or overturned. For example, in *Batalla Vidal v. Nielsen*, the federal district court noted the existence of an injunction in another case but held that injunctive relief was still appropriate because the defendants were appealing the injunction in the other case. 279 F. Supp. 3d 401, 435 (E.D.N.Y. 2018), *vacated and remanded on other grounds*, 140 S. Ct. 1891 (2020) ("Defendants are, however, vigorously contesting that injunction before both the U.S. Court of Appeals for the Ninth Circuit and the U.S. Supreme Court."); *see also California v. Health & Hum. Servs.*, 390 F. Supp. 3d 1061, 1066 (N.D. Cal. 2019) ("the existence of another injunction—particularly one in a different circuit that could be overturned or limited at any time—does not negate Oregon's claimed irreparable harm").

Defendants intend to seek mandamus review of the Harney County Court's order enjoining enforcement of Measure 114's large-capacity magazine restrictions. If the Harney County Court continues its injunction of Measure 114's amendments to Oregon's existing background check laws, Defendants will likely seek review of that injunction as well. And even if Defendants do not seek immediate mandamus relief of the Harney County Court's temporary restraining order enjoining the permit-to-purchase provision, the Harney County Court has

committed to hold a hearing to assess whether that order should remain in place within 10 days of Defendants' notice. Thus, there is a realistic possibility that some or all the Harney County Court's injunctions of Measure 114 will be dissolved or overturned. This Court should, therefore, enter Defendants' proposed injunction (Exhibit 1), which briefly stays enforcement of the permit-to-purchase provision, regardless of the state injunction.

Because Defendants intend to seek mandamus review of some or all of the state court injunctions, this Court may know more about the continuing validity of the state court injunctions within the next several months. That knowledge will be important to assessing Plaintiffs' motions for preliminary relief. If Defendants do not prevail in their potential mandamus proceedings in state court, it may be inappropriate for this Court to enter additional and duplicative injunctive relief. If, on the other hand, Defendants prevail and some or all the state court injunctions are dissolved or overturned, Defendants are likely to agree that this Court will face the question of whether a preliminary injunction here is appropriate, at least on whatever portions of Measure 114 are not enjoined in state court. Other, mixed outcomes are also possible. Because the outcome and timing of the state court proceedings is presently unknown, Defendants do not object to this Court scheduling preliminary injunction proceedings as described in the proposed schedule below. Defendants will timely inform this Court of developments in the state court proceedings.

**Intervenor-Defendant's response:**

Because the Harney County Circuit Court has temporarily enjoined all provisions of Measure 114 challenged by Plaintiffs, they cannot demonstrate a "present or imminent risk of likely irreparable harm," which is a prerequisite to preliminary injunctive relief. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 162 (2010). As many federal courts have recognized, "it is

**Page 13 - JOINT STATUS REPORT**

unnecessary to issue what would essentially be a piggyback injunction where a different court has already enjoined the same conduct." *Arizona v. Mayorkas*, 584 F. Supp. 3d 783, 787 (D. Ariz. 2022); *see also Faust v. Vilsack*, No. 21-C-548, 2021 WL 2806204, at *3 (E.D. Wis. July 6, 2021) ("[C]ourts that have considered the effect of a prior ruling granting the same or similar relief have concluded that once another district court has entered the same relief, the plaintiffs were no longer able to demonstrate the irreparable harm that was needed to justify the extraordinary relief requested.") (collecting cases); *Nat'l Urban League v. DeJoy*, No. CV GLR-20-2391, 2020 WL 6363959, at *11 (D. Md. Oct. 29, 2020) ("in the absence of any clear explanation from Plaintiffs regarding why the current injunctions imposed on Defendants are insufficient to address the harm . . . , the Court cannot conclude that it is 'indisputably clear' that the [denial of additional injunction] is likely to cause irreparable harm to Plaintiffs."); *Washington v. Trump*, No. C17-0141, 2017 WL 4857088, at *6 (W.D. Wash. Oct. 27, 2017) (plaintiffs will not incur "any significant harm" because another district court had "already provide[d] Plaintiff States with virtually all the relief they seek"); *Hawai'i v. Trump*, 233 F. Supp. 3d 850, 853 (D. Haw. 2017) ("[T]he Western District of Washington's nationwide injunction already provides the State with the comprehensive relief it seeks in this lawsuit. As such, the State will not suffer irreparable damage . . . .").

True, other federal courts have reached the opposite conclusion. *See, e.g.*, *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 435 (E.D.N.Y. 2018), *vacated and remanded on other grounds sub nom. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020) (disagreeing with proposition that "Plaintiffs cannot establish irreparable harm simply because another court has already enjoined the same challenged action"). While acknowledging the disagreement among federal district courts, Intervenor is aware of no Supreme Court or Ninth Circuit decision holding

**Page 14 - JOINT STATUS REPORT**

that an applicant for preliminary injunctive relief has met the irreparable injury requirement despite the existence of another court's injunction prohibiting the same challenged conduct. (Intervenor respectfully disagrees with Plaintiffs that the appellate cases they cite address that question.)

In fact, the Ninth Circuit recently affirmed a district court's denial of a requested preliminary injunction against a federal program "because the relief sought was duplicative of the relief the district court had already granted in the [related] matter." *California v. Trump*, 963 F.3d 926, 949 (9th Cir. 2020); *see California v. Trump*, 379 F. Supp. 3d 928, 957 (N.D. Cal. 2019) ("[N]o irreparable harm will result from the denial (without prejudice) of the States' duplicative requested injunction."). The Court of Appeals affirmed the denial of the duplicative injunction even though the first injunction was no longer in effect at the time of appeal. *California v. Trump*, 963 F.3d at 949 ("[W]e continue to see no abuse of discretion in the district court's order, even though at this moment, the injunction in [the related matter] no longer affords the States protection."). The Ninth Circuit noted that, "depending on further developments in these cases, the States are free to seek further remedies in the district court or this Court." *Id.* The same is true of Plaintiffs here. The fact that Plaintiffs are not parties to the Harney County action is immaterial, for in the event the state court injunction is vacated or modified, they may seek relief in this Court.

V.  **Schedule on Motions for a Preliminary Injunction**

The parties propose the following schedule for Plaintiffs' motion(s) for a preliminary injunction:

| | |
|---|---|
| January 4 | Plaintiffs' amended complaints (if any) |
| January 6 | Plaintiffs' motion(s) for a preliminary injunction (or supplemental memo, if any, to existing motion) with declarations and exhibits (if any) |
| January 11 | Amicus briefs in support of Plaintiffs |
| January 13 | Parties' proposal(s) on Rule 706 witness(es), if any |

**Page 15 - JOINT STATUS REPORT**

| | |
|---|---|
| January 13–20 | Depositions of Plaintiffs' declarants |
| February 6 | Defendants' response with declarations and exhibits |
| February 10 | Amicus briefs in support of Defendants |
| February 7–15 | Depositions of Defendants' declarants |
| February 15 | Plaintiffs' reply(ies) |
| February 17 | Deposition designations (all parties) |
| February 21 | Deposition counter-designations (all parties) |
| February 22–24 | Hearing: The Court will receive direct testimony in the form of live testimony, deposition designations, and declarations.[2] Any party may call adverse witnesses for cross-examination (and re-direct) regardless of the form of their direct testimony. Deposition designations are subject to cross-designation. Plaintiffs, collectively, are limited to seven hours of witness examination (direct, cross, and re-direct). Defendants, collectively, are limited to seven hours of witness examination (direct, cross, and re-direct). |
| 45 days after order on preliminary injunction | Defendants' responses to complaints |

All depositions are presumptively limited to three hours per witness. The parties stipulate that their agreement to this schedule is not evidence of a lack of irreparable harm or a lack of urgency of the issues before the Court.

---

[2] The parties request that the Court allow witnesses to appear by video.

DATED this 20th day of December, 2022.

| | |
|---|---|
| CLEMENT & MURPHY, PLLC | ELLEN ROSENBLUM<br>ATTORNEY GENERAL<br>FOR THE STATE OF OREGON |
| *s/Matthew D. Rowen* | *s/ Harry B. Wilson* |
| Matthew D. Rowen<br>Paul D. Clement<br>Erin E. Murphy<br>Trevor W. Ezell<br>Nicholas M. Gallagher<br>*pro hac vice attorneys*<br>*Attorneys for Plaintiffs* | Harry B. Wilson, OSB #077214<br>HarryWilson@MarkowitzHerbold.com<br>Hannah K. Hoffman, OSB #183641<br>HannahHoffman@MarkowitzHerbold.com<br>*Special Assistant Attorneys General for Defendants* |
| JURISLAW LLP<br>Shawn M. Lindsay, OSB #020695<br>shawn@jurislawyer.com<br>*Attorneys for Plaintiffs* | Brian Simmonds Marshall<br>brian.s.marshall@doj.state.or.us<br>*Of Attorneys for Defendants* |
| | PACIFICA LAW GROUP LLP |
| | *s/Jessica A. Skelton*<br>Jessica A. Skelton, OSB #102714<br>Zachary J. Pekelis, *pro hac vice*<br>Kai Smith, *pro hac vice*<br>W. Scott Ferron, *pro hac vice*<br>*Attorneys for Proposed Intervenor-Defendant Oregon Alliance for Gun Safety* |

**ECF CERTIFICATION**

The filing attorney attests that he has obtained concurrence regarding the filing of this document from Plaintiffs' counsel signatories to this document.

Date: December 20, 2022

*s/ Harry B. Wilson*
Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com

1383320

**Page 18 - JOINT STATUS REPORT**