**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Hannah K. Hoffman, OSB #183641**
HannahHoffman@MarkowitzHerbold.com
**MARKOWITZ HERBOLD PC**
1455 SW Broadway, Suite 1900
Portland, OR  97201-3412
(503) 295-3085

    Special Assistant Attorneys General for Defendants

**Ellen F. Rosenblum, OSB #753239**
Attorney General
**Brian Simmonds Marshall, OSB #196129**
Senior Assistant Attorney General
Brian.S.Marshall@doj.state.or.us
**DEPARTMENT OF JUSTICE**
100 SW Market Street
Portland, OR 97201
(971) 673-1880

    Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| OREGON FIREARMS FEDERATION, INC., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>TINA KOTEK, et al.,<br><br>    Defendants,<br><br>and | Case No. 2:22-cv-01815-IM (lead case)<br>           3:22-cv-01859-IM (trailing case)<br>           3:22-cv-01862-IM (trailing case)<br>           3:22-cv-01869-IM (trailing case)<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFFS' FACIAL CHALLENGES TO IMPLEMENTATION OF MEASURE 114 AND MOTION TO DISMISS PLAINTIFFS' AS-APPLIED** |

**DEFENDANTS' MOTION FOR DISMISSAL OF AS-APPLIED CLAIMS AGAINST PERMITTING PROVISIONS FOR LACK OF SUBJECT MATTER JURISDICTION**

| | |
|---|---|
| OREGON ALLIANCE FOR GUN SAFETY,<br><br>                                          Intervenor-Defendant. | **CHALLENGES TO IMPLEMENTATION OF MEASURE 114**<br><br>**F.R.C.P. 12 and 56**<br><br>**Request for oral argument** |

MARK FITZ, et al.,

                                          Plaintiffs,

       v.

ELLEN F. ROSENBLUM, et al.,

                                            Defendants.

KATERINA B. EYRE, et al.,

                                            Plaintiffs,

       v.

ELLEN F. ROSENBLUM, et al.,

                                            Defendants,

      and

OREGON ALLIANCE FOR GUN SAFETY,

                                            Intervenor-Defendant.

DANIEL AZZOPARDI, et al.,

                                            Plaintiffs,

       v.

ELLEN F. ROSENBLUM, et al.,

                                            Defendants.

**DEFENDANTS' MOTION FOR DISMISSAL OF AS-APPLIED CLAIMS AGAINST PERMITTING PROVISIONS FOR LACK OF SUBJECT MATTER JURISDICTION**

## TABLE OF CONTENTS

**Certification** .................................................................................................................. 2

**Motions** .......................................................................................................................... 2

**Introduction** .................................................................................................................. 2

**Memorandum of points and authorities** ................................................................... 3

I.     Factual and Procedural Background ............................................................... 3

II.    Legal standards .................................................................................................. 4

      A.     Summary judgment ................................................................................ 4

      B.     Motion to dismiss for lack of subject matter jurisdiction ...................... 4

III.   **The Court should dismiss plaintiffs' claims based on implementation of the permit-to-purchase program.** ................................................................... 6

      A.     The Court should grant summary judgement against plaintiffs' facial challenge to implementation of Measure 114. ...................................... 6

      B.     Plaintiffs' as-applied challenge to implementation of Measure 114 must be dismissed because it is not ripe. ........................................................ 10

            1.     Plaintiffs' claims regarding hypothetical delays in the permit-to-purchase program in the future are unripe. ............................... 11

            2.     Plaintiffs' concern that rogue permit agents will use subjective criteria to deny permits are wrong and speculative. ................... 14

            3.     At the point when Measure 114's permit requirements are actually applied to plaintiffs, the measure itself provides a remedy for any improper application. ....................................... 15

            4.     The fee for a five-year permit to purchase unlimited firearms is constitutional. ............................................................................... 16

**Conclusion** .................................................................................................................... 17

## CERTIFICATION

Pursuant to LR 7.1(a)(1), the parties have made a good faith effort to resolve this dispute and have been unable to do so.

## MOTIONS

Pursuant to Federal Rules of Civil Procedure 56, this Court should grant defendants' summary judgment against plaintiffs' facial challenges to implementation of Measure 114's permit-to-purchase program because plaintiffs have failed to adduce evidence that Measure 114 cannot be implemented constitutionally in any circumstance.

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(h)(3), and 56 this Court should dismiss plaintiffs' as-applied challenges to implementation of Measure 114's permit-to-purchase program because they are not ripe.

The as-applied and facial challenges to implementation of Measure 114 are in *Azzopardi, et al. v. Rosenblum, et al.*, U.S. District Court for the District of Oregon Case No. 3:22-cv-01869 (Dkt. No. 112) ("*Azzopardi* Complaint"), *Eyre, et al. v. Rosenblum, et al.*, U.S. District Court for the District of Oregon Case No. 3:22-cv-01862-IM (Dkt. No. 67) ("*Eyre* Complaint") (Counts I and II), and *Oregon Firearms Federation, Inc., et al. v. Kotek, et al.*, U.S. District Court for the District of Oregon Case No. 2:22-cv-01815-IM (Dkt. No. 158) ("*OFF* Complaint") (Counts I and II).

## INTRODUCTION

Plaintiffs assert both facial and as-applied challenges to the implementation of Measure 114's permit-to-purchase program. For the reasons stated below, the Court should dismiss those challenges.

Page 2 -   DEFENDANTS' MOTION FOR DISMISSAL OF AS-APPLIED CLAIMS
            AGAINST PERMITTING PROVISIONS FOR LACK OF SUBJECT MATTER
            JURISDICTION

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Factual and Procedural Background

Measure 114 requires that most new firearm purchasers obtain a permit. To obtain a permit, individual purchasers must, among other things, submit to a background check, complete a firearm safety course, be fingerprinted, and pay a fee. Measure 114, § 4. Applicants submit applications to local permit agents, *i.e.*, county sheriffs and local police chiefs. *Id.*

A state circuit court has preliminarily enjoined enforcement of Measure 114 pending a trial on the merits in a state-law challenge to Measure 114. *Arnold v. Kotek*, No. 22CV41008, 2022 WL 17495052 (Or. Cir. Ct., Harney Cnty.). A five-day trial is set to begin in that case on September 18, 2023. The state court enjoined enforcement of Measure 114 but allowed permit agents and the Oregon State Police to move forward with issuing permits-to-purchase.

The Oregon State Police and permit agents have spent the past six months working to implement the permit-to-purchase program. The Oregon State Police ("OSP") are prepared to implement their functions under Measure 114. The Oregon State Sheriffs Association and the Oregon Association of Chiefs of Police are also working to help permit agents perform their duties under Measures 114.

Plaintiffs raise as-applied and facial challenges to the implementation of the permit-to-purchase program. (*Azzopardi* Compl. ¶¶ 44-49; *Eyre* Compl. ¶¶ 83-105; and *OFF* Compl. ¶¶ 118-136.) They contend that Measure 114 will result in unconstitutional delays and arbitrary denials of applications. They also contend that Measure 114 cannot be implemented because the Federal Bureau of Investigation ("FBI") has stated that it will not process fingerprint-based background checks.

Page 3 - DEFENDANTS' MOTION FOR DISMISSAL OF AS-APPLIED CLAIMS AGAINST PERMITTING PROVISIONS FOR LACK OF SUBJECT MATTER JURISDICTION

y

## II.  Legal standards

### A.  Summary judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  In opposing a motion for summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citing Rule 56(e)).  The court must view the evidence and any inferences drawn from the evidence in the light most favorable to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).  In evaluating a motion for summary judgment, a court may not "weigh the evidence" or "make any credibility determinations." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 440-441 (9th Cir. 2017) (internal quotations and citations omitted).

### B.  Motion to dismiss for lack of subject matter jurisdiction

A motion to dismiss for lack of subject matter jurisdiction can be raised at any time.  Fed. R. Civ. P. 12(h)(3). *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction, see Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.").  A claim does not present a ripe case or controversy as required by Article III of the constitution if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 793 (9th Cir. 2012) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998))

Page 4 -   DEFENDANTS' MOTION FOR DISMISSAL OF AS-APPLIED CLAIMS
           AGAINST PERMITTING PROVISIONS FOR LACK OF SUBJECT MATTER
           JURISDICTION

"[F]ederal courts are presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Hornsby v. Lufthansa German Airlines*, 593 F. Supp. 2d 1132, 1135 (C.D. Cal. 2009) (citation omitted). "Although lack of subject matter jurisdiction is an affirmative defense, the burden of proof in a 12(b)(1) motion is on the party asserting jurisdiction[.]" *Id.* (citation omitted). For a challenge to subject matter jurisdiction based on the face of the pleadings, "the district court, accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (cleaned up). But the court is not required to accept just any allegations. "The plaintiff must allege facts, not mere legal conclusions, in compliance with the pleading standards established by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)." *Leite*, 749 F.3d at 1121. For a challenge to subject matter jurisdiction based on the facts of the case, a court "may also consider extrinsic evidence." *Hornsby*, 593 F.Supp.2d at 1135 (citation omitted).

Even where a party has Article III standing, the court should consider whether the party has prudential standing. The prudential standing doctrine provides that a "federal court's jurisdiction . . . can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action" even though "the court's judgment may benefit others collaterally." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (quotation marks and citation omitted). Prudential standing can be raised on the face of the pleadings under Rule 12(b)(6) or Rule 12(c) or on the facts under Rule 56. *Thompson Metal Fab, Inc. v. U.S. Dep't of*

Page 5 -    DEFENDANTS' MOTION FOR DISMISSAL OF AS-APPLIED CLAIMS
            AGAINST PERMITTING PROVISIONS FOR LACK OF SUBJECT MATTER
            JURISDICTION

*Transp.*, 289 F.R.D. 637, 644 (D. Or. 2013) (granting summary judgment on prudential standing grounds).

### III. The Court should dismiss plaintiffs' claims based on implementation of the permit-to-purchase program.

To attack the implementation of Measure 114's permit program as unconstitutional, plaintiffs must demonstrate either that implementation of the program is impossible in every circumstance (*i.e.*, facial unconstitutionality) or that it has been applied to plaintiffs in an unconstitutional manner (*i.e.*, as-applied unconstitutionality). *Rodriguez Diaz v. Garland*, 53 F. 4th 1189, 1203 (9th Cir. 2022) (distinguishing between facial and as applied challenges). Plaintiffs cannot make a showing under either standard.

### A. The Court should grant summary judgement against plaintiffs' facial challenge to implementation of Measure 114.

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Plaintiffs' have not adduced any evidence that Measure 114 will be implemented in such a way that no permit applicant will be able to obtain a permit. Accordingly, the Court should grant summary judgment against plaintiffs' facial challenges to implementation of Measure 114.

"Facial challenges are 'disfavored' because they (1) 'raise the risk of premature interpretation of statutes on factually barebone records,' (2) 'run contrary to the principle of judicial restraint,' and (3) 'threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution.'" *Almerico v. Denney*, 378 F. Supp. 3d 920, 923–24 (D. Idaho 2019) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 451 (2008)).

Page 6 -   DEFENDANTS' MOTION FOR DISMISSAL OF AS-APPLIED CLAIMS AGAINST PERMITTING PROVISIONS FOR LACK OF SUBJECT MATTER JURISDICTION

Sustaining a facial challenge is, therefore, a "heavy burden." *Id.* at 923. "So long as a state policy can be applied constitutionally under some set of circumstances, a facial challenge to that policy must ordinarily fail." *Tipton v. Univ. of Hawaii*, 15 F.3d 922, 925 (9th Cir. 1994).

Plaintiffs have not set forth specific facts showing that Measure 114 cannot be implemented in any circumstance. On the contrary, the evidence shows that OSP is prepared to implement its functions under Measure 114.[1] (Decl. of Commander Rebecca David ("David Decl.") (Dkt. No. 117) ¶ 3.) OSP has created an application form for local law enforcement to use. (*Id.*) OSP can receive completed applications collected by local law enforcement by fax or United States Mail. (*Id.*) Once OSP receives applications, it will run background checks on applicants using existing state and federal systems. (*Id.* ¶ 6.) OSP will report back to the permit agents the results of its background checks. (*Id.* ¶ 8.)

Local law enforcement will also be able to issue permits after the state court lifts its injunction. Kevin Campbell, Executive Director of the Oregon Association of Chiefs of Police ("OACP"), was clear in deposition that his members will implement Measure 114: "When a law is passed, we implement the law." (2/6/2023 Decl. of Rebecca Dodd ("2/6/2023 Dodd Decl.") (Dkt. No. 126) Ex. 7, 1/17/23 Campbell Dep. at 16:4).) In fact, other than the FBI fingerprinting issue, Mr. Campbell could not identify any other "legal obstacle to implementing" Measure 114. (*Id.*, Ex. 7 at 32:12-13; *id.*, Ex. 8, 2/1/23 Myers Dep. at 75:24-76:1 (identifying fingerprint issue as only legal impediment).) Although Mr. Campbell testified that some police departments

---

[1] Defendants dispute that plaintiffs have brought a facial challenge to the provisions of Measure 114 that amend existing state background check statutes to close the Charleston Loophole. To the extent plaintiffs have asserted such a challenge, it fails for the same reasons discussed in this section. Plaintiffs cannot show that those provisions would be unconstitutional in every circumstance. In fact, 38% to 41% of background checks are approved automatically. (*See* 2nd Dodd Decl., Ex. 5 (Defs.' Resp. to Pls.' 1st Interr. No. 23).)

Page 7 -   DEFENDANTS' MOTION FOR DISMISSAL OF AS-APPLIED CLAIMS
            AGAINST PERMITTING PROVISIONS FOR LACK OF SUBJECT MATTER
            JURISDICTION

could face resources challenges, he was not aware of any particular police department that would flatly refuse to implement Measure 114. (*Id.*, Ex. 7 at 104:13-14.) Similarly, Sheriff Pixley, a plaintiff in the *OFF* case, testified that he would implement the permit-to-purchase program if Measure 114 goes into effect. (4/26/2023 Pixley Dep. at 37:21-25, attached to Second Decl. of Rebecca Dodd ("2nd Dodd Decl.") as Ex 1. ("Pixley Dep.").) Sheriff Rowan, another plaintiff, testified that his county would "be ready to go" with in-person demonstrations if the state court injunction is lifted. (*Id.*, Ex. 2, 4/26/2023 Rowan Dep. at 85:18-23, ("Rowan Dep."))

Sheriff Jason Myers, Executive Director of the Oregon State Sheriffs Association ("OSSA"), testified in his deposition in February that a joint OSSA-OACP workgroup was developing a "process map" for implementing Measure 114 at the local level. (2/6/2023 Dodd Decl., Ex. 8, Myers Dep. at 31:22-32:2.) In addition, OSSA and OACP developed guidance for permit agents on how to perform the in-person demonstration portion of Measure 114's training, which has been distributed. (2nd Dodd Decl., Ex. 1, Pixley Dep. at 59:2-23; Ex 3 (Dep. Ex. 113).) Sheriff Pixley testified that he intends to certify in-person demonstration instructors if Measure 114 goes into effect. (*Id.* Ex. 1, Pixley Dep. at 60:13-18.) Sheriff Bowen also confirmed that he would certify instructors, testifying that if Measure 114 "goes into effect and it's the responsibility of my office and that's a service that I have to provide to citizens to lawfully purchase a firearm, yes, I will do everything I possibly can to facilitate those steps needed to purchase a firearm." (*Id.*, Ex. 4, Bowen Dep. at 95:17-24.) Under Measure 114, every law enforcement agency can perform the in-person demonstration component of the firearm training by certifying their own staff. Measure 114 § 4(8)(c)(D). The online portion of the training has been available since January, and many would-be applicants have already completed

Page 8 -   DEFENDANTS' MOTION FOR DISMISSAL OF AS-APPLIED CLAIMS
            AGAINST PERMITTING PROVISIONS FOR LACK OF SUBJECT MATTER
            JURISDICTION

it.  (2nd Decl. of Jason Myers (Dkt. No. 77) ¶ 12.)  In sum, there is no statewide, structural impediment to the implementation of the permit-to-purchase program.

Plaintiffs may contend that the FBI's refusal to perform fingerprint checks will make it impossible to implement Measure 114.  Not so.  Measure 114 requires (1) the permit agent to "request [OSP] to conduct a criminal background check, including . . . a fingerprint identification[] through the Federal Bureau of Investigation"; (2) OSP to determine whether the applicant is qualified or disqualified based on the background check; and (3) OSP to "report the results, including the outcome of the fingerprint-based criminal background check, to the permit agent."  Measure 114, § 4(1)(e).  OSP will meet these requirements.  OSP can and will report the outcome of each of its background checks, including of the FBI fingerprint-based background check, just as the law requires.

At this point in time, the outcome from the FBI would be that they declined to run the check.  (David Decl. ¶ 8.)  OSP's other background checks will provide a basis to determine whether the applicant is qualified or disqualified, while the refusal of the FBI to conduct a fingerprint-based check provides no basis for a decision either way.  The request by a permit agent, the determination by OSP, and the report from OSP to the permit agent are all possible despite the FBI's current declination to conduct a fingerprint-based background check.

But even if the Court determines that Measure 114 requires the FBI to run a criminal background check before a permit agent can issue a permit—a requirement that does not appear in the law's plain text—such a ruling would not invalidate Measure 114.  An Oregon law cannot compel the FBI—a federal agency—to run background fingerprint checks, and any interpretation that would impose such a requirement would create a legal nullity.  *See Hughes v. State*, 314 Or. 1, 31 (1992) (unconstitutional legislative act is a nullity).  Specifically, Measure 114 requires that

Page 9 -   DEFENDANTS' MOTION FOR DISMISSAL OF AS-APPLIED CLAIMS
            AGAINST PERMITTING PROVISIONS FOR LACK OF SUBJECT MATTER
            JURISDICTION

any invalid or ineffective sections, subsections, sentences, or clauses be severed, rather than declaring the entire act invalid or unconstitutional. Measure 114, § 12. Accordingly, the FBI fingerprint check should be severed if the Court concludes that the law cannot be implemented as written.

Plaintiffs have not set forth specific evidence demonstrating a genuine dispute that Measure 114 cannot be implemented in any circumstance. The Court, therefore, must grant summary judgment against plaintiffs' facial challenges to the implementation of Measure 114.

**B.     Plaintiffs' as-applied challenge to implementation of Measure 114 must be dismissed because it is not ripe.**

Plaintiffs' challenges to the implementation of the permit-to-purchase program are speculative and thus unripe. A claim does not present a ripe case or controversy as required by Article III of the constitution if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Alcoa, Inc.*, 698 F.3d at 793 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)); *see also Witt v. Dept. of Air Force*, 527 F.3d 806, 812–13 (9th Cir. 2008) (holding that procedural due process claim was unripe where injury "may or may not occur"). Even if a plaintiff alleges a case or controversy as required by Article III, courts also look to two prudential factors to determine whether a claim is ripe: "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park Hospitality Ass'n v. Dept. of Interior*, 538 U.S. 803, 808 (2003).

Standing and ripeness are closely related and often overlap. Here, defendants contend that plaintiffs' allegations are unripe. Cases concerning standing are applicable to the ripeness analysis because the Ninth Circuit has "previously recognized that 'in many cases, ripeness coincides squarely with standing's injury in fact prong.' . . . 'Indeed, because the focus of our

ripeness inquiry is primarily temporal in scope, ripeness can be characterized as standing on a timeline.'" *Montana Env't Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1189 (9th Cir. 2014) (citation omitted).

### 1. Plaintiffs' claims regarding hypothetical delays in the permit-to-purchase program in the future are unripe.

Plaintiffs' as-applied challenge to implementation of the permit-to-purchase program is unripe. In *Bruen*, the Supreme Court acknowledged that shall-issue permit regimes are facially constitutional but held that plaintiffs could bring as-applied challenges to permit regimes if they have "lengthy wait times" or "exorbitant fees." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2138 (2022); *Id.* at 2162 (Kavanaugh) ("[S]hall-issue licensing regimes are constitutionally permissible, subject of course to an as-applied challenge if a shall-issue licensing regime does not operate in that manner in practice.").

As a threshold matter, plaintiffs' as-applied challenge fails because Measure 114's permit requirement has not been applied to any plaintiff. Indeed, a state court injunction currently prohibits the state from requiring permits to purchase firearms. It is impossible to know when that injunction might be lifted, but it will not be until late September at the earliest. In general, a plaintiff "cannot prevail on an *as-applied* challenge without showing that the law has in fact been (or is sufficiently likely to be) unconstitutionally *applied* to him." *McCullen v. Coakley*, 573 U.S. 464, 485 n.4 (2014) (emphasis in original). Moreover, there is no allegation or evidence that any plaintiff has applied for a permit, and it is unclear when they might do so. To evade the obvious fact that the law has not been applied to plaintiffs, they describe as an "as-applied" challenge their speculation about harms that might occur when permits are required, and plaintiffs try to obtain them. (*Azzopardi* Compl. ¶¶ 30-32; *OFF* Compl. ¶¶ 125-131, 136; *Eyre*

Compl. ¶¶ 90-96, 101.) This is not, in fact, an as-applied challenge. And the harms that they envision are speculative at best and thus inappropriate for this Court to adjudicate. At a minimum, this Court should conclude that the harms are not fit for judicial review and there is no hardship to plaintiffs of requiring plaintiffs wait until the "the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).

For instance, plaintiffs speculate that because there are no certified in-person instructors today, they will be unable to obtain permits when they eventually apply for them. (*Azzopardi* Compl. ¶¶ 30-31; *OFF* Compl. ¶ 131; *Eyre* Compl. ¶ 96.) But the fact that instructors have not been certified now, while the permit requirement remains enjoined, provides only a speculative basis to think that instructors will remain unavailable if that injunction is lifted. Measure 114 authorizes local permit agents—today—to certify their own staff to perform the in-person demonstration component, should they wish. And as discussed above, OSSA and OACP have developed guidelines on how to perform the in-person demonstrations. In short, it is speculative to think that in-person demonstrations will be unavailable when permits to purchase are required.

Indeed, the available evidence in the case suggests that plaintiffs' speculation is likely wrong. As Sheriff Rowan testified, his office is waiting to certify in-person demonstration instructors until after the litigation is settled, but his office would be "ready to go" with certified instructors if and when Measure 114 is allowed to take effect. (2nd Dodd Decl., Ex. 2, Rowan Dep. at 85:18-23.)

Similarly, plaintiffs assert that delays in the background check system will be "lengthy" when Measure 114 goes into effect. (*OFF* Compl. ¶¶ 125, 127-129; *Eyre* Compl. ¶¶ 90, 92-94.) But this is speculative too. Plaintiffs have not offered any evidence that all permit applications

Page 12 -   DEFENDANTS' MOTION FOR DISMISSAL OF AS-APPLIED CLAIMS
            AGAINST PERMITTING PROVISIONS FOR LACK OF SUBJECT MATTER
            JURISDICTION

will experience delay, or even that some will. To the contrary, background checks that do not hit on any potential disqualifiers—38% to 41% of applications—are processed automatically. (2nd Dodd Decl., Ex. 5 (Defs.' Resp. to Pls.' 1st Interr. No. 23).) For lengthy delays, Measure 114 provides for judicial review. *See* Measure 114 § 5. As a result, any speculation about whether an individual plaintiff may or may not experience a delay in their background check, and whether that delay may or may not be redressed through the judicial review provisions expressly delineated in the law, would render such a ruling by this Court on such a claim advisory at best.

Plaintiffs' hypothetical harms are therefore insufficient to establish a justiciable controversy. In *Legal Aid Services of Oregon v. Legal Services Corp.*, 561 F. Supp. 2d 1187, 1207–08 (D. Or. 2008) (Papak, M.J.), the court, after examining the allegations and the summary judgment record, rejected the plaintiffs' contention that the law had been applied to them unconstitutionally. The court made clear that hypothetical harms were insufficient.

> Here, the LASO plaintiffs have failed to identify with precision a single lawyer who has attempted to avail himself or herself of the opportunity to speak as an [Oregon Law Center] attorney and been prevented from doing so by LSC enforcement of the [Program Integrity Rule]. Because the only evidence that the LASO attorneys' free speech rights have been in any way impaired is, at best, speculative or hypothetical, the LASO plaintiffs cannot prevail in their as-applied challenge.

561 F. Supp. 2d at 1207–08.

The situation here is also similar to the allegations in a recent case from the Central District of California where three firearm advocacy groups challenged a city's laws that prohibited firearms on city property. *California Rifle & Pistol Ass'n, Inc. v. City of Glendale*, No. 2:22-CV-07346-SB-JC, 2022 WL 18142541, at *1 (C.D. Cal. Dec. 5, 2022). The court, in analyzing a motion for a preliminary injunction, concluded that the "as-applied" challenge was not likely to prevail because the plaintiffs did not allege specific facts as to how and where the

**Page 13 -   DEFENDANTS' MOTION FOR DISMISSAL OF AS-APPLIED CLAIMS AGAINST PERMITTING PROVISIONS FOR LACK OF SUBJECT MATTER JURISDICTION**

law would be unconstitutionally applied, and they sought a remedy that completely enjoined the city law as to all locations and people instead of enjoining any particular application of it.

> Although Plaintiffs claim to bring an as-applied challenge, they make no arguments about the desired conduct of any particular member at any particular location, and they request an injunction completely prohibiting Defendants from enforcing the ordinance in any manner against their members with [concealed carry weapon] licenses.

2022 WL 18142541, at *7–8 (concluding that plaintiffs lacked standing without allegations of specific concrete harms). Here, similarly, plaintiffs want the Court to enjoin Measure 114 in its entirety because of the speculative possibility that it could be applied unconstitutionally.

### 2. Plaintiffs' concern that rogue permit agents will use subjective criteria to deny permits are wrong and speculative.

Plaintiffs also posit that permit agents will have "unbounded discretion" to needlessly deny permits. (*OFF* Compl. ¶¶ 125-126; *Eyre* Compl. ¶¶ 90-91; *Azzopardi* Compl. ¶ 52.) Plaintiffs' fears are unfounded and provide no basis for a ruling on the law's constitutionality. In relevant part, Measure 114 requires a permit agent to deny the permit if the application "present[s] reasonable grounds" for the agent to conclude that the applicant is reasonably likely to be a danger to himself, others, or the community at large. Measure 114 § 4(1)(b)(C). Under well-established Oregon law, this is an objective test that must be met with evidence: The mental-health review provision in Measure 114 is identical to a provision of the concealed handgun license statute. ORS § 166.293(2). That statute has been implemented by sheriffs in Oregon for decades and yet plaintiffs offer no evidence indicating that it is a subjective standard that sheriffs use capriciously to deny applications that should be granted. When construing the concealed handgun license provision, the Oregon Court of Appeals has held that a reviewing court should consider the "evidence on which the sheriff relied in evaluating" the applicant's

Page 14 -   DEFENDANTS' MOTION FOR DISMISSAL OF AS-APPLIED CLAIMS
                AGAINST PERMITTING PROVISIONS FOR LACK OF SUBJECT MATTER
                JURISDICTION

dangerousness. *Concealed Handgun License for Stanley v. Myers*, 276 Or. App. 321, 331 (2016).

Plaintiffs' theory that capricious permit agents will exercise "unbounded discretion" to reject permit applications is pure speculation. *See Berron v. Illinois Concealed Carry Licensing Rev. Bd.*, 825 F.3d 843, 846 (7th Cir. 2016) ("A federal court should not assume that the state will choose the unconstitutional path when a valid one is open to it."). Again, plaintiffs have not yet applied for permits and have not put forward any evidence that they would reasonably expect the permit agents in their jurisdictions to reject their applications for no reason. Incongruously, some plaintiffs are themselves permit agents, and no sheriff testified in deposition that they and their colleagues will needlessly deny applications based on "subjective criteria" and "whims." Plaintiffs' theories about how permit agents will conduct the mental health review is speculative and wrong as a matter of Oregon law.

### 3. At the point when Measure 114's permit requirements are actually applied to plaintiffs, the measure itself provides a remedy for any improper application.

Although this litigation is not a proper forum for challenging a statute that has not yet been applied to plaintiffs, it is worth noting that, should the Measure 114 permitting requirements ever actually *be* applied to one of the plaintiffs, Measure 114 also creates a cause of action in state court, where that plaintiff would be free to challenge the manner in which the statute was applied. Measure 114 creates a right to seek judicial review of the denial of a permit or the failure to decide whether a permit should issue within 30 days. Measure 114 § 5. During any such appeal, a circuit court will conduct a *de novo* review of the permit agent's decision including any evidence relied upon by the permit agent and any countervailing evidence from the applicant. *See Concealed Handgun License for Stanley*, 276 Or. App. at 331. In that proceeding,

**Page 15 -  DEFENDANTS' MOTION FOR DISMISSAL OF AS-APPLIED CLAIMS AGAINST PERMITTING PROVISIONS FOR LACK OF SUBJECT MATTER JURISDICTION**

the Oregon courts can also address constitutional challenges. *Cf. Sachdev v. Oregon Med. Bd.*, 312 Or. App. 392, 393 (2021) (addressing due process arguments in judicial review of agency decision). Thus, should an applicant feel that the permit agent has acted unreasonably, the law provides judicial review provisions that allow the applicant to challenge that decision in court, at a point in time in which there will be actual facts on an actual record that the court can review.

### 4.  The fee for a five-year permit to purchase unlimited firearms is constitutional.

*Bruen* also states that a facially constitutional shall-issue regime could face an as-applied challenge if permit fees are "exorbitant." *Bruen*, 142 S. Ct. 2138 at n.9 (2022). Here, plaintiffs do not allege that the application fee in Measure 114—actual costs, not to exceed $65 for new licenses and $50 for renewals—is unconstitutional. (*OFF* Compl. ¶ 130; *Eyre* Compl. ¶ 95.) Instead, they allege that they must also pay for firearms training and these costs combined are unconstitutional. (*Id.*)

Measure 114 does not impose exorbitant fees. The fee to receive a certificate following OSSA's online safety course is $60.[2] Even if there is a similar fee for the in-person demonstration of $60, the total cost for a five-year permit would be no more than $185 for new applications (or $37 per year). This modest annual expense to purchase an unlimited number of firearms is constitutional. *See, e.g.*, *Kwong v. Bloomberg*, 723 F.3d 160, 165-66 (2d Cir. 2013) (upholding $340 fee for handgun license, which lasted three years).

\* \* \*

In sum, Measure 114's permit requirements have not been applied to any plaintiff. And plaintiffs' claim that Measure 114 inevitably will be applied to them in an unconstitutional

---

[2] https://oregonchl.org/ (Last visited: May 12, 2023).

**Page 16 -   DEFENDANTS' MOTION FOR DISMISSAL OF AS-APPLIED CLAIMS AGAINST PERMITTING PROVISIONS FOR LACK OF SUBJECT MATTER JURISDICTION**

manner is entirely speculative. It is also speculative to conclude that the state court would not correct any improper application to plaintiffs through Measure 114's appeal process. The Court should, therefore, dismiss as unripe plaintiffs' as-applied challenges to the implementation of Measure 114.

## CONCLUSION

For the reasons above, the Court should grant summary judgment against plaintiffs' facial challenges to the implementation of Measure 114 and dismiss plaintiffs' as-applied challenges to the implementation of Measure 114 as unripe.

DATED: May 12, 2023.

ELLEN ROSENBLUM
ATTORNEY GENERAL
FOR THE STATE OF OREGON

By: *s/ Harry B. Wilson*
Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Hannah K. Hoffman, OSB #183641
HannahHoffman@MarkowitzHerbold.com

*Special Assistant Attorney General for Defendants*

Brian Simmonds Marshall, OSB #196129
brian.s.marshall@doj.state.or.us
*Of Attorney for Defendants*

Page 17 -   DEFENDANTS' MOTION FOR DISMISSAL OF AS-APPLIED CLAIMS AGAINST PERMITTING PROVISIONS FOR LACK OF SUBJECT MATTER JURISDICTION

## CERTIFICATE OF COMPLIANCE WITH L.R. 7-2(b)(2)

I certify that this brief complies with the applicable word-count limitation under L.R. 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 4,720 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, and any certificates of counsel.

DATED this 12th day of May, 2023.

                                              *s/ Harry B. Wilson*
                                              Harry B. Wilson, OSB #077214
                                              Attorney for Defendants

1447129