**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Hannah K. Hoffman, OSB #183641**
HannahHoffman@MarkowitzHerbold.com
**MARKOWITZ HERBOLD PC**
1455 SW Broadway, Suite 1900
Portland, OR  97201-3412
(503) 295-3085

      Special Assistant Attorneys General for Defendants

**Ellen F. Rosenblum, OSB #753239**
Attorney General
**Brian Simmonds Marshall, OSB #196129**
Senior Assistant Attorney General
Brian.S.Marshall@doj.state.or.us
**DEPARTMENT OF JUSTICE**
100 SW Market Street
Portland, OR 97201
(971) 673-1880

      Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| OREGON FIREARMS FEDERATION, INC., et al.,<br><br>                     Plaintiffs,<br><br>      v.<br><br>TINA KOTEK, et al.,<br><br>                   Defendants,<br><br>       and | Case No. 2:22-cv-01815-IM (lead case)<br>         3:22-cv-01859-IM (trailing case)<br>         3:22-cv-01862-IM (trailing case)<br>         3:22-cv-01869-IM (trailing case)<br><br>**DEFENDANTS' WITNESS LIST** |

OREGON ALLIANCE FOR GUN SAFETY,

                                    Intervenor-Defendant.

MARK FITZ, et al.,

                                    Plaintiffs,

                v.

ELLEN F. ROSENBLUM, et al.,

                                    Defendants.

KATERINA B. EYRE, et al.,

                                    Plaintiffs,

                v.

ELLEN F. ROSENBLUM, et al.,

                                    Defendants,

                and

OREGON ALLIANCE FOR GUN SAFETY,

                                    Intervenor-Defendant.

DANIEL AZZOPARDI, et al.,

                                    Plaintiffs,

                v.

ELLEN F. ROSENBLUM, et al.,

                                    Defendants.

Defendants Tina Kotek, Ellen F. Rosenblum, and Casey Codding ("Defendants") intend to present the following witnesses and testimony at trial.  Defendants reserve the right to revise, modify, and supplement this list and witness narratives as developments before and during trial warrant, including based on the outcome of pretrial and trial motion practice.

## I.    Expert Witnesses

### A.    Roger Pauly (1 hour direct testimony)

Dr. Pauly will testify as described in the declaration previously filed at ECF 120.

### B.    James Yurgealitis (1 hour direct testimony)

Mr. Yurgealitis will testify as described in the declaration previously filed at ECF 125.

### C.    Lucy Allen (1 hour direct testimony)

Ms. Allen will testify as described in the declaration previously filed at ECF 116.

### D.    Brian DeLay (1 hour direct testimony)

Dr. DeLay will testify as described in the declaration previously filed at ECF 118.

### E.    Louis Klarevas (1 hour direct testimony)

Dr. Klarevas will testify as described in the declaration previously filed at ECF 119.

### F.    David McDowall (1 hour direct testimony)

Dr. McDowall will testify as described in the report attached as Exhibit 1.

### G.    Brennan Rivas (1 hour direct testimony)

Dr. Rivas will testify as described in the declaration previously filed at ECF 121.

### H.    Dr. Michael Siegel, M.D. (1 hour direct testimony)

Dr. Siegel will testify as described in the declaration previously filed at ECF 122.

### I.    Robert Spitzer (1 hour direct testimony)

Dr. Spitzer will testify as described in the declaration previously filed at ECF 123.

### J.    Kevin Sweeney (1 hour direct testimony)

Dr. Sweeney will testify as described in the declaration previously filed at ECF 124.

## II.    Lay Witnesses

### A.    Kevin Campbell, Executive Director, Oregon Association Chiefs of Police (1 hour direct testimony)

Mr. Campbell will testify that he is employed by the Victory Group as the Executive

Director for the Oregon Association of Chiefs of Police ("OACP").  He has been in that role

for approximately 28 years. Mr. Campbell will testify that OACP is a 501(c)(3) nonprofit corporation with 125 members within municipal police agencies statewide.

Mr. Campbell will testify that members of OACP will enforce the law to their greatest ability.  He is not aware of any OACP member that has stated it will refuse to implement Measure 114.

Mr. Campbell will testify that OACP, the Oregon State Sheriffs' Association ("OSSA"), and the Oregon State Police ("OSP") have formed a steering committee to guide the implementation of the permit-to-purchase regime outline in Measure 114.  In addition, OACP and OSSA are participating in workgroups to develop a step-by-step process for implementing permits and certifying in-person demonstration instructors.

Mr. Campbell will testify about the process of the workgroups.  Mr. Campbell will testify that the permit process subgroup is drafting a template for implementation that can be used by local permit agents as a guide statewide.  He will also testify that the in-person demonstration subgroup has worked on details related to certification of the safety training portion of Measure 114.  OSSA currently offers an online course that satisfies the required educational component, and the in-person demonstration subgroup is developing the live demonstration portion of the safety training.

Mr. Campbell will testify that the work product of both subgroups is being shared with OSP to ensure full coordination between local permit agents and OSP.  Mr. Campbell will further testify that OACP is working as quickly as it can to produce these materials in order to assist local permit agents with implementation of Measure 114's permit regime.  Mr. Campbell will describe and testify to documents created by the workgroups.  Mr. Campbell will testify

about the status of recommendations for implementation of Measure 114 by the leadership of OSSA and OACP.

Mr. Campbell will testify to his understanding of the permit application process once an individual has completed an application and submitted it to the local permit agent. He will testify that the local permit agent will review the application for completeness and will collect a photograph and fingerprints from the applicant.

Mr. Campbell will testify that the local permit agent will transmit the application with the photograph and fingerprints to OSP for a background check. In addition, Mr. Campbell will testify that the local permit agent will determine whether the applicant has completed a firearm safety course and will determine that the applicant does not pose a danger to themselves or others. Mr. Campbell will testify that the local permit agent will collect a fee and issue the permit. Mr. Campbell will testify that the permit-to-purchase process in Measure 114 is modeled after Oregon's existing concealed handgun licensing program.

**B.    Wendy Landers (1 hour direct testimony)**

**1.    Ms. Landers' background.**

Ms. Landers will explain her professional background, her job title as Director of Criminal Justice Information Services at the Oregon State Police, her job responsibilities, and her reporting structure.

**2.    Ms. Landers will testify the Oregon State Police is prepared to implement Measure 114.**

Ms. Landers will testify that OSP is prepared to implement Measure 114. OSP has created an application form for local law enforcement to use, which is available on the OSP website. OSP can receive completed applications from local law enforcement via fax or U.S. mail.

Ms. Landers will testify that OSP can receive fingerprints on paper cards through the U.S. mail or by courier immediately.  Ms. Landers will testify that OSP also has a technology vendor lined up that can implement a system that will allow permit agents to transmit fingerprints to OSP electronically.  The vendor is currently on stand-by, pending the outcome of this and the state litigation and any legislation passed in the legislature.  It will take approximately 30 business days for the vendor to set up the system once OSP tells it to begin work.  Prior to trial, OSP will have applied for a grant that could allow local law enforcement agencies to obtain electronic fingerprint transmission devices if they do not already have them.

Ms. Landers will testify that once OSP receives an application from a permit agent, it will run background checks on the applicant using existing state and federal systems, including an Oregon fingerprint database.  OSP's background checks include a search in Oregon's Law Enforcement Data Systems, which reports any mental health adjudication or commitment in the State of Oregon, as well as criminal history.  OSP will also run a search in the National Instant Criminal Background Check System, which also reports any mental health adjudications or commitments in other states, in addition to criminal history in all states.  Ms. Landers will describe all the background checks that OSP will run.

Ms. Landers will testify that the Federal Bureau of Investigation ("FBI") has informed OSP that it will not allow a fingerprint-based criminal background checks for permit applicants based on its determination that Ballot Measure 114 does not meet the requirements of Pub. L. 92-544.  If OSP's background checks using existing state and federal systems find no disqualifiers, OSP will report back to the permit agent that no disqualifiers have been found.  OSP will also report that the FBI declined to allow a fingerprint-based criminal background check under Pub. L. 92-544.

Ms. Landers will testify that OSP is prepared to implement a Microsoft Excel-based database immediately to track permits. The database exists today but there is no data in it. Over the long-term, OSP will also work with a vendor to obtain a dedicated permit-to-purchase software solution.

Ms. Landers will testify that if Measure 114 goes into effect, OSP will also immediately begin recruiting additional employees to help process background checks. OSP is ready to open the recruitment now.

Ms. Landers will testify that OSP has been working with OSSA and OACP to implement Measure 114 and she will describe the collaboration, including around the Measure 114 permit application, review, and issuance processes and around certification of in-person demonstration instructors. To Ms. Landers's knowledge, permit agents do not need any further information from OSP to implement the permit-to-purchase regime.

### 3.    Ms. Landers will describe the existing background check process.[1]

Ms. Landers will describe OSP's existing background check process and its status. She will testify that when OSP's Firearm Instant Check System ("FICS") unit receives a background check request, the request is first processed in an automated computer process. Approximately 38% to 41% of requests are approved in the automated process within minutes. Requests cannot be processed automatically for a variety of reasons, including because the purchaser's name returns a possible criminal history, because there are multiple potential matches for the same name, because the firearm serial number is a match or potential match for a stolen firearm, or because information is incomplete. Requests that cannot be processed automatically by computer are placed in a queue for review by FICS staff.

---

[1] To the extent the Court determines this is a live issue for trial.

Upon staff review, OSP determines whether the request is approved, denied, or pended for additional research.  OSP staff work on pended requests until they determine whether the request is approved or denied, even if the firearm has already been transferred.  FICS staff notify the gun dealer upon completing their review and determining a purchaser's qualification status.

Ms. Landers will testify that the number of requests for background checks increased significantly after the passage of Measure 114.  In November 2022, FICS received more than 85,000 requests—about 3.4 times more requests than the average monthly number of requests in 2022.  The spike in background check requests increased the number of checks in the queue for review by FICS staff but did not prevent the automated process from continuing to approve approximately 38-41% of requests automatically.  Over the last several months, FICS staff have significantly reduced the number of people in the queue since its height in late 2022.

Ms. Landers will also testify that since 2018, FICS, has prevented more than 12,400 individuals who are not permitted to own firearms from obtaining a gun, including more than 4,700 felons and 2,000 individuals on probation.

**C.    Jason Myers, Executive Director, Oregon State Sheriffs Association (1 hour direct testimony)**

If he is available for trial, Sheriff Myers will testify that he is employed as the Executive Director of the Oregon State Sheriffs' Association.  Sheriff Myers has been in that role for approximately three and a half years.  He will testify that OSSA is a 501(c)(3) nonprofit organization dedicated to supporting Oregon's sheriffs and sheriffs' offices.  OSSA provides training for sheriffs' office personnel and advocates on behalf of its members.  OSSA's Board of Directors is made up of the elected sheriffs of each county in Oregon—36 in total.  OSSA also has an executive committee.

Sheriff Myers will testify that OSSA is not aware of any sheriff's office that intends to refuse to implement Measure 114 on the grounds that it is unconstitutional.

Sheriff Myers will testify to his coordination of two workgroups with OSSA and OACP to implement the permit-to-purchase program. One workgroup—the permit agent workgroup—is preparing a process map to demonstrate a step-by-step process for how permit agents will process applications for permits. That workgroup is staffed by subject matter experts, for example, civil managers with concealed handgun permit experience and records supervisors. The process map will be submitted to the executive committees for OSSA and OACP for approval. Sheriff Myers will testify about the status of approval. The process map will be shared with OSSA and OACP members for implementation by the approximately 160 permit agents statewide. The process map has been shared with OSP.

Sheriff Myers will testify that the second workgroup—the in-person demonstration workgroup—is developing the in-person portion of the safety training requirement in Measure 114. He will testify that the work product for this workgroup is close to completion. Once completed, the work product will outline the recommended qualifications of a third-party who can be certified as an in-person demonstration instructor in the event that local permit agents decide not to provide that instruction themselves. He will also testify that OSSA has prepared an online training program that applicants can—and have already—complete to comply with the educational portion of the safety training requirement in Measure 114.

Sheriff Myers will testify that he believes an inter-network governmental agreement would permit a police department and sheriff's office to agree to designate one or the other as the sole local permit agent for that jurisdiction.

Sheriff Myers will testify that OSP has provided a draft copy of the permit application to OSSA.  He will also testify that, following receipt of an application, permit agents will conduct a preliminary review of the application to look for any immediate disqualifiers.  Next, permit agents will collect fingerprints and a photograph of the applicant, which will be transmitted to OSP with the completed application either by courier, mail, or, potentially, by a combination of electronic and fax transmissions.  Mr. Myers will testify that he understands that the FBI will not run a background check for OSP of applications submitted under Measure 114.  It is his understanding that OSP will return the permit application to local permit agents with an indication that seven out of eight components of a background check have been completed.

Sheriff Myers will also testify that local permit agents are responsible for ensuring that an applicant has completed an educational component—which is currently offered online by OSSA—and an in-person demonstration component.  Finally, local permit agents must determine whether the applicant poses a danger to themselves or others.  Mr. Myers will testify that a nearly identical danger determination is currently made by sheriffs' offices statewide when an individual applies for a concealed handgun license.  The workgroup has generally recommended that local permit agents utilize the same guidance used for this determination through the concealed handgun license process.  OSSA has issued a civil manual on the concealed handgun process.

Sheriff Myers will testify that following completion of the above steps and approval of an application, the local permit agent will collect the permit application fee and issue the permit.

Sheriff Myers will testify to the current process to apply for a concealed handgun license, including receipt of the application, fingerprinting of the applicant, submission of the applicant's fingerprints to OSP, completion of a law enforcement data system background check and a determination that the applicant does not pose a danger to themselves or others, and collection of a fee.

**D.      Sheriff Brian Pixley (15 minutes)**

Sheriff Pixley will testify that Measure 114's provision requiring permit agents to determine whether permit applicants are reasonably likely to be a danger to self or others is substantially the same as the determination sheriffs must make to award a concealed handgun license ("CHL").  Sheriff Pixley's office makes that determination for CHL licenses.  His employees are trained in a CHL school on how to make the determination.  They also can consult an OSSA Manual.  Sheriff Pixley also relies on Court documents, statements from family, statements from doctors or medical providers, and review with his county counsel to make the required determination.

Sheriff Pixley will testify that if the courts ultimately rule that Measure 114 is constitutional, his office will implement the permit requirement because he does not want to be a hindrance to people legally buying firearms.  Sheriff Pixley will testify that his office has taken steps to implement the permit process.  His office is in talks with a vendor to help automate the process.  He has also seen advice prepared by the OSSA on how to certify instructors.  He would certify instructors if Measure 114 is allowed to be enforced.

DATED: May 15, 2023.

ELLEN ROSENBLUM
ATTORNEY GENERAL
FOR THE STATE OF OREGON

By:   *s/Hannah K. Hoffman*

Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Hannah K. Hoffman, OSB #183641
HannahHoffman@MarkowitzHerbold.com
*Special Assistant Attorneys General for
Defendants*

Brian Simmonds Marshall, OSB #196129
brian.s.marshall@doj.state.or.us
*Of Attorney for Defendants*

1449084