**Harry B. Wilson, OSB #077214**
HarryWilson@MarkowitzHerbold.com
**Hannah K. Hoffman, OSB #183641**
HannahHoffman@MarkowitzHerbold.com
**MARKOWITZ HERBOLD PC**
1455 SW Broadway, Suite 1900
Portland, OR  97201-3412
(503) 295-3085

Special Assistant Attorneys General for Defendants

**Ellen F. Rosenblum, OSB #753239**
Attorney General
**Brian Simmonds Marshall, OSB #196129**
Senior Assistant Attorney General
Brian.S.Marshall@doj.state.or.us
**DEPARTMENT OF JUSTICE**
100 SW Market Street
Portland, OR 97201
(971) 673-1880

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| OREGON FIREARMS FEDERATION, INC., et al., | Case No. 2:22-cv-01815-IM (lead case) |
| | 3:22-cv-01859-IM (trailing case) |
| | 3:22-cv-01862-IM (trailing case) |
| Plaintiffs, | 3:22-cv-01869-IM (trailing case) |
| v. | **DEFENDANTS' RESPONSE TO PLAINTIFFS' CONSOLIDATED MOTIONS IN LIMINE** |
| TINA KOTEK, et al., | |
| Defendants, | |
| and | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' CONSOLIDATED MOTIONS IN LIMINE**

OREGON ALLIANCE FOR GUN SAFETY,

                                    Intervenor-Defendant.

MARK FITZ, et al.,

                                    Plaintiffs,

                v.

ELLEN F. ROSENBLUM, et al.,

                                    Defendants.

KATERINA B. EYRE, et al.,

                                    Plaintiffs,

                v.

ELLEN F. ROSENBLUM, et al.,

                                    Defendants,

DANIEL AZZOPARDI, et al.,

                                    Plaintiffs,

                v.

ELLEN F. ROSENBLUM, et al.,

                                    Defendants.

**DEFENDANTS' RESPONSE TO PLAINTIFFS' CONSOLIDATED MOTIONS IN LIMINE**

TABLE OF CONTENTS

Introduction ........................................................................................................................ 2

Legal Standard .................................................................................................................. 2

Argument ........................................................................................................................... 2

I.      Evidence regarding injuries to gunshot victims is admissible under *Bruen*. ............. 4

II.     The number of shots fired in self-defense is relevant to the *Bruen* analysis................ 5

III.    Public carry regulations are relevant historical analogues........................................ 5

IV.     Public safety concerns are relevant to analysis under *Bruen*. ..................................... 6

V.      Evidence regarding mass shootings remains relevant post-*Bruen*.............................. 7

Conclusion ......................................................................................................................... 8

**INTRODUCTION**

The Court should deny plaintiffs' Consolidated Motions in Limine in their entirety.  Each category of evidence plaintiffs seek to exclude is relevant under *Bruen*.

**LEGAL STANDARD**

Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the probative value of the proffered evidence, and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403."  *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (cleaned up).

**ARGUMENT**

The Court should deny plaintiffs' Motions in Limine to exclude, as irrelevant and prejudicial, evidence regarding (1) medical treatment of gunshot victims, (2) rounds typically fired in self-defense instances, (3) regulations limiting "public carry," (4) public safety, and (5) mass shootings.  Each of these motions is premised on plaintiffs' erroneous interpretation of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

In *Bruen*, the Supreme Court announced a new standard for adjudicating Second Amendment claims, one "centered on constitutional text and history."  *Id.* at 2128–29.  Under this text-and-history approach, courts must first determine that "the Second Amendment's plain text covers an individual's conduct," *id.* at 2129–30—*i.e.*, that the challenged regulation prevents

law-abiding citizens from "keep[ing]" or "bear[ing]" protected "arms." U.S. Const. amend. II. If it does, "the Constitution presumptively protects that conduct," and "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130. To satisfy this burden, the government must identify a "well-established and representative historical *analogue*"—not a "historical *twin*" or "dead ringer"—to the challenged law, which is "relevantly similar" according to "two metrics": "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133. Thus, the historical comparator must have "impose[d] a comparable burden on the right of armed self-defense" that is also "comparably justified." *Id*.

In addition, although *Bruen* rejected "interest balancing," which took into account the public-safety rationale for a challenged law in assessing its tailoring, 142 S. Ct. at 2131, the *Bruen* standard does not require the courts to blind themselves to present-day justifications and realities. Rather, *Bruen* requires courts to account for contemporary public-safety rationales in at least two respects at the historical stage of the inquiry. First, *Bruen* requires a "more nuanced" approach when the law addresses "regulatory challenges posed by firearms today," including "unprecedented societal concerns or dramatic technological changes." *Id.* at 2131–32. Second, in comparing the challenged law to the historical analogues, courts are required to determine whether the burden imposed by the challenged law is "comparably justified." *Id.* at 2133.

This Court has said as much: the Court "may consider the public safety concerns of today" in determining whether LCM restrictions are "comparably justified." (12/6/23 Opinion and Order on Temporary Restraining Order ("TRO Order") (ECF 39) at 31.)

With this understanding of *Bruen*, plaintiffs' relevance concerns melt away. Accordingly, the Court should deny plaintiffs' Motions in Limine.

**Page 3 -   DEFENDANTS' RESPONSE TO PLAINTIFFS' CONSOLIDATED MOTIONS
IN LIMINE**

I.    **Evidence regarding injuries to gunshot victims is admissible under *Bruen*.**

In their first motion, plaintiffs argue that the impact of gunshot wounds is irrelevant under *Bruen* because it has no bearing on the "historical tradition" analysis.  (Pls.' Consolidated Motions in Limine ("Pls.' Mot. in Limine") (ECF 180) at 7-8.)  According to plaintiffs, this type of evidence was "categorically ruled out" in *Bruen*.  (*Id.* at 7.)  But, as this Court observed, "*Bruen* still instructed lower courts to consider the 'how and why' of a particular regulation in historical context."  (TRO Order at 30 (quoting *Bruen*, 142 S. Ct. at 2132-33).)  The purpose of the regulatory burden, *i.e.*, the "why," is thus relevant to *Bruen*'s analysis of whether the modern regulation is "relevantly similar" to its historical counterpart.

Here, the "why" in question is the relationship between large-capacity magazines ("LCMs") and mass shooting incidents, and the ensuing threats to public safety.  In considering and comparing the "why" of the regulation, evidence about the actual damage to human bodies caught in the crossfire of that nexus—between LCMs and mass shootings—is highly relevant.  As this Court has held, public safety concerns appropriately inform the "comparable justification" between Measure 114 and its historical analogues.  (TRO Order at 31.)

Plaintiffs also claim that evidence of gunshot injuries is irrelevant because it merely addresses dangerousness, and not whether the regulated weaponry is unusual.  (Pls.' Mot. in Limine at 6.)  Not so.  Evidence is not irrelevant if it establishes only one component of a multi-component test.

Plaintiffs next argue that this evidence is inadmissible under Rule 403 because it is prejudicial.  But "[a]ll relevant evidence is prejudicial."  *McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 258 (D. Ariz. 2022).  "[I]t is unfairly prejudicial only if it tends to suggest or encourage a decision on improper reasoning."  *Id.*  *Bruen* instructs lower courts to consider the "how and why" of the challenged regulations, and the real-world consequences of LCMs—

**Page 4 -  DEFENDANTS' RESPONSE TO PLAINTIFFS' CONSOLIDATED MOTIONS IN LIMINE**

which necessarily include the catastrophic damage caused by multiple gunshot wounds—are central to the "why" of Measure 114. Such evidence may be difficult, but it is a necessary part of the Court's inquiry, not an avenue to improper reasoning.

## II.    The number of shots fired in self-defense is relevant to the *Bruen* analysis.

Plaintiffs next argue that the Court should exclude evidence of the number of shots fired in self-defense. (Pls.' Mot. in Limine at 8-9.) They erroneously contend that "the only relevant question under Rule 401 is whether the magazines at issue are in 'common use' or 'commonly owned' for lawful purposes." (*Id.*) But, as this Court has observed, "a finding that a firearm is in 'common use' does not end the inquiry into whether the firearm falls within the ambit of the Second Amendment's protections. Instead, the question is whether the weapon is in common use . . . for lawful purposes like self-defense." (TRO Order at 21 (some quotation marks omitted) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 624 (2008)); *see also* TRO Order at 21 n.13 ("The Second Amendment . . . requires a court to not only consider the prevalence of a particular firearm, but also the nature of that firearm's use among civilians.").) Accordingly, evidence about the defensive use of guns is relevant to whether LCMs are needed for lawful self-defense and thus qualify as protected "Arms" at the textual stage of the *Bruen* analysis.

Separately, such evidence is also relevant to determine whether Measure 114 imposes a comparable burden on the right to armed self-defense. This evidence establishes the present-day justifications for Measure 114's restrictions on LCMs—the "why" to determine whether Measure 114 is "relevantly similar" to historical regulations. This Court has already relied on such evidence for precisely this reason. (TRO Order at 30-31.)

## III.    Public carry regulations are relevant historical analogues.

Plaintiffs next argue, wrongly, that "[e]vidence relating to the existence or scope of public carry laws cannot serve as analogs for Oregon's 'permit-to-purchase' regime and is

therefore irrelevant to the substantive law of this case."[1]  (Pls.' Mot. in Limine at 9-10.)

Plaintiffs' argument hinges on a supposed distinction between laws that affect the right to keep

firearms and those that affect right to bear them.  (*Id.*)  But the Supreme Court has not

established different tests for keeping and bearing arms.  Instead, as the *Heller* Court explained,

the Second Amendment does not forbid "longstanding prohibitions on the *possession* of firearms

by felons and the mentally ill[.]"  554 U.S. at 626 (emphasis added).  The argument is also

incongruous with *Bruen*'s explanation that permitting regimes "are designed to ensure only that

those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'"  142 S. Ct.

at 2138 n.9.

But even if defendants were required to show that permits-to-purchase are consistent with

the historical tradition of firearms regulation, *Bruen* does not require "historical twin[s]" or

"dead ringer[s]."  *Bruen*, 142 S.Ct. at 2133 (emphasis omitted).  What is relevant is the "how and

why the regulations burden a law-abiding citizen's right to armed self-defense," and whether the

burden on the citizen is "comparably justified."  *Id.*  Evidence regarding public carry laws is

relevant to the Court's task with respect to both Measure 114's permit requirements and

restrictions on LCMs.  By reviewing such evidence, the Court can assess whether Measure 114 is

"comparably justified."

IV.    **Public safety concerns are relevant to analysis under *Bruen*.**

Plaintiffs' fourth motion in limine seeks to exclude all evidence regarding public safety

on the grounds that public safety concerns are no longer relevant considerations post-*Bruen*.

Again, this analysis is wrong.  In "cases implicating unprecedented societal concerns or dramatic

technological changes," *Bruen* requires courts to compare modern and historical regulations by

---

[1] As defendants contend in their Trial Brief and elsewhere, *Bruen* expressly allows states to enact shall-issue permit regimes.  (Defs.' Tr. Br. (ECF 121) at 15-17.)

analogy. *Id*. at 2132. This Court held previously that "the public safety concerns of today" are relevant to its analysis of the "how and why" under *Bruen*. (TRO Order at 31.) Plaintiffs' evidence regarding the efficacy of firearms regulations in addressing unprecedented societal concerns and dramatic technological changes goes directly to this inquiry.

Furthermore, in the unlikely event that the Court concludes that plaintiffs have proved any of their claims, public safety evidence is relevant to determining the scope of any injunction. "In determining the scope of an injunction, a district court has broad latitude, and must balance the equities between the parties and give due regard to the public interest." *Apple Inc. v. Psystar Corp*., 673 F. Supp. 2d 943, 951 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011). "Public safety should be considered by a court when granting equitable relief." *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1404 (9th Cir. 1993) (citation omitted).

## V.    Evidence regarding mass shootings remains relevant post-*Bruen*.

In their final motion in limine, plaintiffs seek to exclude all evidence regarding the "prevalence or nature of mass shootings" and any link between mass shootings and LCMs. (Pls.' Mot. in Limine at 13.) Plaintiffs argue that because this type of evidence was previously relied on in "the pre-*Bruen* balancing inquiry," it is completely inadmissible now because "interest-balancing is foreclosed by *Bruen*." (*Id.*)

But defendants are not introducing evidence about mass shootings to ask the Court to engage in "interest-balancing." This evidence is relevant to demonstrate that LCMs implicate societal concerns that have no Founding Era precedent. As set forth in defendants' Trial Brief, LCMs increase the lethality of mass shootings. (Defs.' Tr. Br. at 39.) In addition, evidence regarding mass shootings is also relevant to determining "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 142 S. Ct. at 2133. The fact that

LCMs are favored in mass shootings, but unnecessary to self-defense, is relevant to show that restrictions on LCMs are "comparably justified." *Id.*

Finally, plaintiffs argue that evidence relating to mass shootings is unfairly prejudicial. Evidence regarding mass shootings may be disturbing, but it is a necessary component of the Court's analysis. Thus, particularly in a bench trial, such evidence's probative value is not "substantially outweighed by a danger" of unfair prejudice. Fed. R. Evid. 403.

## CONCLUSION

For all of the foregoing reasons, the Court should deny plaintiffs' Motions in Limine in their entirety.

DATED: May 22, 2023.

ELLEN ROSENBLUM
ATTORNEY GENERAL
FOR THE STATE OF OREGON

By:    *s/ Harry B. Wilson*

Harry B. Wilson, OSB #077214
HarryWilson@MarkowitzHerbold.com
Hannah K. Hoffman, OSB #183641
HannahHoffman@MarkowitzHerbold.com
*Special Assistant Attorneys General for Defendants*

Brian Simmonds Marshall, OSB #196129
brian.s.marshall@doj.state.or.us
*Of Attorney for Defendants*

1450627