Shawn M. Lindsay
shawn@jurislawyer.com
Daniel J. Nichols
dan@jurislawyer.com
JurisLaw LLP
Three Centerpointe Drive, Suite 160
Lake Oswego, OR 97035
Telephone: (503) 968-1475

*Attorneys for Eyre Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| OREGON FIREARMS FEDERATION, INC., et al.,<br><br>　　　　　Plaintiffs,<br>　v.<br>TINA KOTEK, et al.,<br>　　　　　Defendants. | Case No. 2:22-cv-01815-IM *(Lead Case)*<br>Case No. 3:22-cv-01859-IM *(Trailing Case)*<br>Case No. 3:22-cv-01862-IM *(Trailing Case)*<br>Case No. 3:22-cv-01869-IM *(Trailing Case)*<br><br>CONSOLIDATED CASES<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE** |
| MARK FITZ, et al.,<br>　　　　　Plaintiffs,<br>　v.<br>ELLEN F. ROSENBLUM, et al.,<br>　　　　　Defendants. | |
| KATERINA B. EYRE, et al.,<br>　　　　　Plaintiffs,<br>　v.<br>ELLEN F. ROSENBLUM, et al.,<br>　　　　　Defendants. | |
| DANIEL AZZOPARDI, et al.,<br>　　　　　Plaintiffs,<br>　v.<br>ELLEN F. ROSENBLUM, et al.,<br>　　　　　Defendants. | |

Page 1 -  PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE

# ARGUMENT

Defendants seek to exclude, both as direct evidence and as a basis for expert testimony, survey evidence from the "2021 National Firearms Survey: Updated Analysis Including Types of Firearms Owned." But they do not come close to showing that this survey fails to clear the "low bar" for the admissibility of survey evidence. The survey was performed by Georgetown Professor William English, whose work in this area has been cited by the Supreme Court of the United States. It provides a comprehensive assessment of firearm and magazine ownership and use patterns in America, which are unquestionably relevant to this case. Defendants quarrel with the survey's methodology, but they apparently failed to read the survey's detailed explanation of how it was conducted, which confirms that it does not share any of the flaws of the rare surveys that courts have deemed inadmissible. Indeed, those cases express concern only with surveys with exceedingly low response rates, which plainly does not describe the impressive 92.5% response rate that Dr. English's survey garnered. Defendants are free to raise whatever quarrels they have with the survey at trial, as the Ninth Circuit has repeatedly instructed parties must typically do. But they have not identified any factual or legal basis for excluding the English survey entirely.

## I. The English Survey Easily Satisfies the Low Rule 702 Bar.

When it comes to survey evidence, "the Ninth Circuit has set a low bar" for admissibility under Federal Rule of Evidence 702. *Simpson Strong-Tie Co. Inc. v. MiTek Inc.*, 2023 WL 137478, at *2 (N.D. Cal. Jan. 9, 2023). A survey should be admitted so long as "it is conducted according to accepted principles and is relevant." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010). Any "'[t]echnical inadequacies' in a survey, 'including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility.'" *Airhawk Int'l, LLC v. Ontel Prods. Corp.*, 2020 WL

10321726, at *6 (S.D. Cal. Jan. 2, 2020) (quoting *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1998)). The Ninth Circuit adds that "technical unreliability" is defined expansively, explaining that "methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey," not its admissibility. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001). Accordingly, a survey may be excluded only if it either is wholly irrelevant or "suffer[s] from serious methodological flaws." *Obrey v. Johnson*, 400 F.3d 691, 696 (9th Cir. 2005).

Defendants do not dispute that Dr. English's survey is highly relevant to this case; nor could they, as whether the magazines Oregon has banned are "in common use" is a central question in this case. *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111, 2134 (2022). Defendants instead confine their objections to the manner in which the survey was conducted. But their objections do not even have any grounding in fact, let alone satisfy the extremely high bar for declaring a survey so utterly unreliable as to be inadmissible.

The English survey was conducted by a highly qualified expert in conjunction with a well-respected professional survey firm. Dr. English, the author of the survey, is a professor of Strategy, Economics, Ethics, and Public Policy at Georgetown University's McDonough School of Business. He has a Ph.D. from Duke University and a master's degree from the University of Oxford, and he is published widely in journals and books. *See William English*, Georgetown University Faculty, Georgetown360, bit.ly/3ME55fV (last visited May 22, 2023). Dr. English's scholarship on firearms ownership and use has been cited by several courts, including the Supreme Court. *See Bruen,* 142 S.Ct. at 2158 n.1 (Alito, J., concurring) (citing an amicus brief by Dr. English for its statistical analysis on the effects of right-to-carry laws). Indeed, the very study Defendants seek to exclude has recently been relied on by another court. *See Del. State*

Page 3 -  PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION IN
              LIMINE

*Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, __ F.Supp.3d __, 2023 WL 2655150, at *6 (D. Del. Mar. 27, 2023). Dr. English continues to contribute to the field of firearm ownership and use, and he recently released an extended analysis of his survey that specifically focuses on magazine ownership by capacity—an area of obvious relevance to this case. *See* Ex. 1 to Lindsay Decl., William English, Ph.D., *2021 National Firearms Survey: Analysis of Magazine Ownership and Use* (May 4, 2023), bit.ly/3OmrS0Y.

      Defendants note that "Dr. English posted this document online, but it is not otherwise published," and that he hired a vendor to administer the survey. Def.Mot.3. To the extent they mean to suggest that those are reasons to exclude the survey, that is plainly wrong. Dr. English followed a common scholarly practice in posting his survey on the Social Science Research Network ("SSRN") website, "an online repository of academic research." *Catalanello v. Kramer*, 18 F.Supp.3d 504, 509 (S.D.N.Y. 2014); *see Emps.' Ret. Sys. v. Wells Fargo & Co.*, 2022 WL 1443231, at *4 (N.D. Cal. May 6, 2022) ("an online repository of preprint academic articles"). Defendants cite no law—because none exists—requiring survey data to be published in a peer-reviewed journal to be admissible. And the survey was conducted by Centiment, a professional and well-respected survey firm that has conducted surveys for many well-known institutions and companies, including the Smithsonian, Stanford University, Lyft, and SoFi. *See Our Customers*, Centiment, bit.ly/3OhujCb (last visited May 22, 2023). Again, Defendants cite no law—because none exists—rendering surveys conducted by third parties inadmissible. To the contrary, the "case law … suggests there is nothing inherently problematic with having a survey conducted by a third party." *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F.Supp.3d 1050, 1080 (C.D. Cal. 2015).

Page 4 -  PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION IN
          LIMINE

Defendants' attack Dr. English's survey for purportedly failing to disclose its methodology for selecting respondents, Def.Mot.3—and then confusingly turn around and attack the survey for purportedly being "self-selected," by which they mean a survey in which participants volunteer to participate based on the topic, Def.Mot.4. In fact, they are wrong on both counts. The survey gives a detailed account of its methodology on pages 4-7, and that methodology was decidedly not self-selection in the sense that Defendants claim. *See* William English, Ph.D., *Updated Analysis Including Types of Firearms Owned* 4-7, App'x B (May 13, 2022), bit.ly/3OAxPrk. The survey began with a "nationally representative sample" of 54,244 individuals drawn from Centiment's large pools of survey respondents. *Id.* at 4. These initial respondents were given a screener question that asked them to select which of several outdoor items, including a firearm, they owned. *Id.* 4. Importantly, during this screener phase, the respondents did not know that the survey was related to firearms, which ensured that their decision whether to respond would not be impacted by the subject matter. *Id.* at 4. Of the 54,222 original respondents, 16,708 were confirmed as firearm owners, and that group was then used to conduct the main survey about firearm and magazine ownership. *Id.* Among this group of primary participants, there was a 92.5% response rate to the survey. *Id.* And the survey included an industry-standard "disqualifying" question about halfway through, which increased its reliability because only those who read the question in its entirety could answer it correctly, and only those who answered correctly were included in the survey results. *Id.* at 6. Finally, the survey collected comprehensive demographic information on the participants to verify that they were indeed representative of the general U.S. population on gender, income, race, age, and state of residence. *See id.* App'x. B.

The survey thus did not suffer from either of the two principal concerns that Defendants identify with "self-selected" surveys—i.e., nonresponse bias and the prospect that participants may

Page 5 -   PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION IN
     LIMINE

not be representative.  *See* Def.Mot.4 (citing Fed. Judicial Center, Reference Manual on Sci. Evid. 359 (3d ed.)).  As to the former, the screener phase of the survey ensured that participants did not know its topic when they initially decided to respond, and hence would not decline simply because they did not want to participate in a survey about firearms.  And once the primary participants began the main survey, there was no longer any self-selection.  As to the latter, far from failing to consider whether participants were representative, Appendix B of the survey contains an extensive breakdown of participants by gender, age, race, income, and residency to ensure that they were nationally representative.  And because of the manner in which it was conducted, the response rate for the primary participants was an impressive 92.5%.  That far surpasses the reliability metrics encouraged by the Federal Judicial Center's Reference Manual on Scientific Evidence, which explains that "high response rates (i.e., *80% or higher*) are desirable because they generally eliminate the need to address the issue of potential bias from nonresponse."  Fed. Judicial Center, Reference Manual on Sci. Evid. 384 (3d ed.) (emphasis added) (footnote omitted).

Defendants inexplicably ignore the English survey's detailed explanation of how it was *actually* conducted in favor of testimony from two experts who, without purporting to have any knowledge of how the survey was conducted, noted that it "appears" to be or is "apparently" self-selected.  *See* Def.Mot.5 (quoting Wilson Decl., Ex. 7 (Depo. of Gary Kleck at Tr. 76:5-77:3), (Depo. of David McDowall at Tr. 27:22-25, 28:15-29:13, 30:13-31:18)).[1]  But whether the English

---

[1] In particular, Dr. Kleck claimed—without a copy of the survey in front of him—that Dr. English was "vague about exactly how he developed his sample" and that there was "nothing in his report to *contradict* the *assumption* that what he had was a self-selecting sample." Dkt. 175-7 at 12 (emphasis added).  But as detailed above, Dr. Kleck was simply confused:  The survey extensively detailed how it developed its sample, and that sample refutes any claim that it was a self-selecting sample.  *See supra*, p.5.  Dr. McDowall likewise testified, purely from his own memory, that "[f]rom the sound of it" "it sounds like it's a voluntary sample." Dkt. 175-9 at 7-8 (noting that that was Dr. McDowall's "impression").  But like Dr. Kleck, Dr. McDowall wrongly believed that the survey did not describe its methods, *see id.* at 8-10, and he had reviewed Dr. Kleck's deposition on this point beforehand, which compounds his misperception, *see id.* at 8.

Page 6 -   PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE

survey employed self-selection is a question of fact, not a matter of opinion, and the uncertainty of two experts about what methods Dr. English employed cannot change the reality that the survey in fact carefully avoided the principal concerns with pure self-selections surveys. Indeed, Dr. English himself recently confirmed as much in his latest update on the results of the survey, where he explicitly explains that "this survey did not rely on a convenience sample or respondent self-selection, but rather reflected a representative sample of U.S. residents 18 and older." English, *supra, Analysis of Magazine Ownership and Use*, at 2.

In all events, to the extent Defendants mean to suggest that "self-selection" surveys are categorically inadmissible, they are wrong. While Defendants cite cases that excluded surveys that used self-selection, those courts did so because the surveys had incredibly low response rates, not simply because they employed self-selection. *See Jimenez v. Allstate Ins. Co.*, 2019 WL 13088814, at *17 (C.D. Cal. May 13, 2019) (excluding survey with a 33% response rate); *In re Autozone, Inc.*, 2016 WL 4208200, at *18 (N.D. Cal. Aug. 10, 2016) (excluding survey with a 3% or 6% response rate); *Sec. Alarm Fin. Enters., L.P. v. Alder Holdings*, *LLC*, 2017 WL 5248181, at *6, *7 (D. Alaska Feb. 21, 2017) (excluding survey of 19 people in which only 9 responded); *Wallace v. Countrywide Home Loans Inc.*, 2012 WL 11896333, at *4 (C.D. Cal. Aug. 31, 2012) (excluding survey with a 14.5% response rate). Defendants never claim that Dr. English's survey has a high nonresponse rate; nor could they, given that the survey actually had an impressively high *response* rate of 92.5%. Thus, even assuming the English survey could be described as employing some degree of self-selection, Defendants still have not identified any basis to exclude it.

Of course, Defendants are free to raise whatever quarrels they may have with Dr. English's methodology at trial. *See Clicks Billiards*, 251 F.3d at 1263. Indeed, resolving disputes about the strength of evidence is the entire point of trial. *See FTC v. LendingClub Corp.*, 2020 WL 2838827,

Page 7 -   PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE

at *14 (N.D. Cal. June 1, 2020) ("[D]ueling assertions of biased methodology are properly resolved at trial."); *see also Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1185 (11th Cir. 2013) (holding that when one expert testified that a survey's "methods were unreliable," that "kind of disagreement between experts ordinarily goes to the credibility of expert testimony, not its admissibility"), *abrogated on other grounds by CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333 (11th Cir. 2017). But Defendants cannot exclude Dr. English's survey entirely by pretending that its methodology was something other than what it actually was.

## II. The English Survey Is Admissible Under Rule 703 and 802.

Defendants' remaining arguments are equally meritless. They first argue that Dr. English's survey is not an appropriate basis for an expert opinion under Federal Rule of Evidence 703 because it is not admissible under Rule 702. But that argument is entirely derivative of their Rule 702 argument, which is wrong for the reasons already explained. Nonetheless, Defendants are also wrong to suggest that Mr. Hanish, an expert in the field of firearm use, cannot rely on a survey that is "the most comprehensive assessment of firearms ownership and use patterns in America to date." English, *supra*, *Updated Analysis Including Types of Firearms Owned* at 2. Indeed, the fact that courts have relied on this very survey for exactly the same reasons, *see supra*, p.3-4, is proof positive that it is the "kind[] of fact[] or data" upon which an "expert[] in the particular field" of firearm use "would reasonably rely," Fed. R. Evid. 703. Defendants' only basis for claiming otherwise is to note that another one of Plaintiffs' experts testified that *he* would not rely on the English survey. Needless to say, one expert cannot preclude another expert from relying on highly relevant evidence just by declining to do so himself. *See Tampa Bay Water.,* 731 F.3d at 1185 ("disagreement between experts ordinarily goes to the credibility of expert testimony, not its admissibility").

Page 8 -   PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE

As for Defendants' Rule 802 hearsay argument, Defendants acknowledge (at 7) that this argument likewise rises or falls with their Rule 702 argument, as "the Ninth Circuit has held that survey evidence does not constitute hearsay." *Baker v. SeaWorld Ent., Inc.*, 423 F.Supp.3d 878, 928 (S.D. Cal. 2019) (quoting *Fortune Dynamic, Inc.*, 618 F.3d at 1036). Accordingly, because the survey is admissible under Rule 702, it is admissible under Rule 802 as well.

## CONCLUSION

For the reasons set forth above, this Court should deny Defendants' Motion in Limine.

DATED: May 22, 2023

Paul D. Clement*
Erin E. Murphy*
Matthew D. Rowen*
Nicholas M. Gallagher*
Clement & Murphy, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900

* admitted *pro hac vice*

s/ Stephen Joncus
Stephen J. Joncus, OSB #013072
JONCUS LAW PC
13203 SE 172nd Ave Ste 166 #344
Happy Valley, OR 97086
(971) 236-1200
steve@joncus.net

JURISLAW LLP

s/ Shawn M. Lindsay
Shawn M. Lindsay (OSB No.: 020695)
Daniel J. Nichols (OSB No.: 101304)
Three Centerpointe Drive
Suite 160
Lake Oswego, OR 97035
(503) 968-1475
shawn@jurislawyer.com

*Counsel for Eyre Plaintiffs*

s/ Leonard W. Williamson
Leonard W. Williamson, OSB #910020
VAN NESS WILLIAMSON LLP
960 Liberty St. SE, Ste 100
Salem, OR 97302
(503) 365-8800
l.williamson@vwllp.com

*Counsel for OFF Plaintiffs*

s/ James L. Buchal
James L. Buchal, OSB #910020
MURPHY & BUCHAL LLP
PO Box 86620
Portland, OR 97286
(503) 227-1011
jbuchal@mbllp.com

*Counsel for Fitz and Azzopardi Plaintiffs*

## ATTORNEY CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2023, I have made service of the foregoing **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE** of the party listed below in the manner indicated:

| | |
|---|---|
| Matthew D. Rowen<br>Erin E. Murphy<br>Nicholas M. Gallagher<br>Paul D. Clement<br>Clement & Murphy, PLLC<br>706 Duke Street<br>Alexandria, VA 22314<br>*Attorney for Eyre Plaintiffs* | ☐ U.S Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email:<br>matthew.rowen@clementmurphy.com;<br>erin.murphy@clementmurphy.com;<br>nicholas.gallagher@clementmurphy.com;<br>paul.clement@clementmurphy.com<br>☒ Electronically via USDC CM/ECF system |
| Jessica A. Skelton<br>Zachary J. Pekelis<br>Kai Smith<br>W. Scott Ferron<br>Pacific Law Group LLP<br>1191 Second Avenue, Suite 2000<br>Seattle, WA 98101-3404<br>*Attorney for Proposed Intervenor-Defendant Oregon Alliance for Gun Safety* | ☐ U.S Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email:<br>jessica.skelton@pacificlawgroup.com;<br>zach.pekelis@pacificalawgroup.com;<br>kai.smith@pacificlawgroup.com;<br>scott.ferron@pacificalawgroup.com<br>☒ Electronically via USDC CM/ECF system |
| James L. Buchal<br>Murphy & Buchal<br>PO Box 86620<br>Portland, OR 97286<br>*Attorney for Fitz Plaintiffs* | ☐ U.S Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email: jbuchal@mbllp.com<br>☒ Electronically via USDC CM/ECF system |
| William Bergstrom<br>Cooper & Kirk, PLLC<br>1523 New Hampshire Avenue, NW<br>Washington, DC 20036<br>*Attorney for Fitz Plaintiffs* | ☐ U.S Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email: wbergstrin@cooperkirk.com<br>☒ Electronically via USDC CM/ECF system |
| D. Angus Lee<br>Angus Lee Law Firm, PLLC<br>9105A NE HWY 99, Suite 200<br>Vancouver, WA<br>*Attorney for Fitz Plaintiffs* | ☐ U.S Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email: Angus@AngusLeeLaw.com<br>☒ Electronically via USDC CM/ECF system |

| | |
|---|---|
| James L. Buchal<br>Murphy & Buchal<br>PO Box 86620<br>Portland, OR 97286<br>*Attorney for Azzopardi Plaintiffs* | ☐ U.S Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email: jbuchal@mbllp.com<br>☒ Electronically via USDC CM/ECF system |
| William Sack<br>Firearms Policy Coalition, Inc.<br>5550 Painted Mirage Rd., Suite320<br>Las Vegas, NV 89149<br>*Attorney for Azzopardi Plaintiffs* | ☐ U.S Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email: Wsack@FPClaw.org<br>☒ Electronically via USDC CM/ECF system |
| Adam Kraut<br>Second Amendment Foundation<br>12500 NE Tenth Place<br>Bellevue, WA 98665<br>*Attorney for Azzopardi Plaintiffs* | ☐ U.S Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email: akraut@saf.org<br>☒ Electronically via USDC CM/ECF system |
| D. Angus Lee<br>Angus Lee Law Firm, PLLC<br>9105A NE HWY 99, Suite 200<br>Vancouver, WA<br>*Attorney for Azzopardi Plaintiffs* | ☐ U.S Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email: Angus@AngusLeeLaw.com<br>☒ Electronically via USDC CM/ECF system |
| Stephen J. Joncus<br>Joncus Law LLC<br>13203 SE 172nd Ave, Ste 166 #344<br>Happy Valley, OR 97086<br>*Attorney for OFF Plaintiffs* | ☐ U.S Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email: steve@joncus.net<br>☒ Electronically via USDC CM/ECF system |
| Leonard W. Williamson<br>Van Ness Williamson<br>960 Liberty Street S, Suite 100<br>Salem, OR 97302<br>*Attorney for OFF Plaintiffs* | ☐ U.S Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email: l.williamson@vwllp.com<br>☒ Electronically via USDC CM/ECF system |
| Pete Serrano<br>Silent Majority Foundation<br>5238 Outlet Drive<br>Pasco, WA 99301<br>*Attorney for OFF Plaintiffs* | ☐ U.S Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email: pete@silentmajorityfoundation.org<br>☒ Electronically via USDC CM/ECF system |

CERTIFICATE OF SERVICE                                                                                          2

| | |
|---|---|
| Jessica A. Skelton<br>Zachary J. Pekelis<br>Kai Smith<br>W. Scott Ferron<br>Pacific Law Group LLP<br>1191 Second Avenue, Suite 2000<br>Seattle, WA 98101-3404<br>*Attorney for Proposed Intervenor-Defendant*<br>*Oregon Alliance for Gun Safety* | ☐ U.S Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email:<br>jessica.skelton@pacificlawgroup.com;<br>zach.pekelis@pacificalawgroup.com;<br>kai.smith@pacificlawgroup.com;<br>scott.ferron@pacificalawgroup.com<br>☒ Electronically via USDC CM/ECF system |
| Brian Simmonds Marshall<br>Oregon Department of Justice<br>Trial Division<br>Special Litigation Unit<br>100 SW Market Street<br>Portland, OR 97201<br>*Attorney for Defendants* | ☐U.S Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email: brain.s.marshal@doj.state.or.us<br>☒ Electronically via USDC CM/ECF system |
| Erin N. Dawson<br>Hannah Hoffman<br>Harry B. Wilson<br>Markowitz Herbold PC<br>1455 SW Broadway, Suite 1900<br>Portland, OR 97201<br>*Attorney for Defendants* | ☐ U.S Mail<br>☐ Facsimile<br>☐ Hand Delivery<br>☐ Overnight Courier<br>☐ Email:<br>erindawson@markowitzherbold.com;<br>HannahHoffman@markowitzherbold.com;<br>harrywilson@markowitzherbold.com<br>☒ Electronically via USDC CM/ECF system |

DATED: May 22, 2023

        s/ Shawn M. Lindsay
        Shawn M. Lindsay (OSB No.: 020695)
        Counsel for Eyre Plaintiffs