**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **OREGON FIREARMS FEDERATION, et al.**, <br><br> Plaintiffs, <br><br> v. <br><br> **TINA KOTEK, et al.**, <br><br> Defendants. <br> _____ <br> **MARK FITZ, et al.**, <br><br> Plaintiffs, <br><br> v. <br><br> **ELLEN F. ROSENBLUM, et al.**, | Case No. 2:22-cv-01815-IM (Lead Case) <br><br>    3:22-cv-01859-IM (Trailing Case) <br><br>    3:22-cv-01862-IM (Trailing Case) <br><br>    3:22-cv-01869-IM (Trailing Case) <br><br><br> **ORDER RE: CLARIFICATION OF ISSUES FOR TRIAL** |

1 – ORDER

|  |
|---|
| Defendants. |
| **KATERINA B. EYRE, et al.**, |
| Plaintiffs, |
| v. |
| **ELLEN F. ROSENBLUM, et al.**, |
| Defendants. |
| **DANIEL AZZOPARDI, et al.**, |
| Plaintiffs, |
| v. |
| **ELLEN F. ROSENBLUM, et al.**, |
| Defendants. |

**IMMERGUT, District Judge.**

Based on statements made at the Pretrial Conference and in pretrial briefing, this Court believes it would be helpful to clarify the issues that this Court must resolve at trial. This Court's interpretation of the legal questions it must answer to determine whether Ballot Measure 114 ("BM 114") violates the Second Amendment is based on its reading of *New York State Rifle &*

*Pistol Ass'n., Inc. v. Bruen*, 142 S. Ct. 2111 (2022), as well as *District of Columbia v. Heller*, 554 U.S. 570 (2008). Those questions are set forth as follows:

A.  **Count I: Permitting Provisions and the Second Amendment**

   1. **Are Oregon's permitting provisions presumptively constitutional under *Bruen*?**

      a. **Do the permitting provisions constitute a "shall-issue" licensing regime under which "a general desire for self-defense is sufficient to obtain a [permit]"?**

"To be clear, nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes, under which 'a general desire for self-defense is sufficient to obtain a [permit].' These shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'. . . And they likewise appear to contain only 'narrow, objective, and definite standards' guiding licensing officials . . . rather than requiring the 'appraisal of facts, the exercise of judgment, and the formation of an opinion.'" *Bruen*, 142 S. Ct. at 2138, n. 9 (internal citations omitted).

   2. **Is the regulated conduct protected by the Second Amendment?**

   3. **Can Defendants demonstrate that the regulation is consistent with the historical tradition of firearm regulation?**

B.  **Count II: Permitting Provisions and the Fourteenth Amendment**

   1. **Do BM 114's permitting provisions violate Due Process?**

      a. **Do the permitting provisions prevent Plaintiffs from exercising a fundamental constitutional right?**

C.  **Count III: Large-Capacity Magazines ("LCMs") and the Second Amendment**

   1. **Are LCMs protected by the Second Amendment?**

      a. **Are LCMs "bearable arms"?**

"[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582. "[E]ven though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense." *Bruen*, 142 S. Ct. at 2132.

### b. Are LCMs in common use today for lawful purposes, centrally self-defense?

The Second Amendment "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625. "[T]he inherent right of self-defense has been central to the Second Amendment right." *Id.* at 629. "[T]he Second Amendment protects the right to keep and bear arms for the purpose of self-defense." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 749–50 (2010). "In *Heller* and *McDonald*, we held that the Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense." *Bruen*, 142 S. Ct. at 2125.

### c. Do LCMs fall into a category of arms that are not protected by the Second Amendment?

#### i. Are LCMs "dangerous and unusual"?

"[In *Heller*], we found it 'fairly supported by the historical tradition of prohibiting the carrying of "dangerous and unusual weapons"' that the Second Amendment protects the possession and use of weapons that are "in common use at the time."'" *Bruen*, 142 S. Ct. at 2128 (quoting *Heller*, 554 U.S. at 627).

### 2. Can Defendants demonstrate that BM 114's LCM restrictions are consistent with the historical tradition of firearm regulation?

"[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may

not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126.

        **a. Did LCMs or their analogues exist historically at the time of the Founding or Reconstruction, or does this case implicate "unprecedented societal concerns" or "dramatic technological changes"?**

"[C]ases implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced approach. The regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791 or the Reconstruction generation in 1868. . . ." *Id.* at 2132.

            **i. Do modern LCMs represent a "dramatic technological change[]" from arms that existed at the time of the Founding or Reconstruction?**

            **ii. Is there a link between LCMs and mass shootings and, if so, do mass shootings present an "unprecedented societal concern[]" different from societal concerns at the time of the Founding or Reconstruction?**

        **b. Do modern and historical regulations impose a comparable burden on the right of armed self-defense, and is that burden comparably justified?**

"[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are '*central*'' considerations when engaging in an analogical inquiry." *Id.* at 2132 (emphasis original).

**D. Count IV: LCMs and the Fifth Amendment**

    **1. Do BM 114's restrictions on LCMs constitute a taking?**

        **a. Is BM 114 a valid exercise of the state's police power?**

        **b. Does BM 114 constitute a physical taking?**

        **c. Does BM 114 constitute a regulatory taking?**

**E. Count V: LCMs and the Fourteenth Amendment**

1. Do BM 114's restrictions on LCMs violate due process?

    a. Are the LCM restrictions retroactive?

    b. If the LCM restrictions are retroactive, do Defendants provide adequate justification?

F. **Count VI: Large-Capacity Magazines and Vagueness**

1. Are the LCM restrictions void for vagueness?

    a. Do the LCM restrictions provide a person of ordinary intelligence fair notice of what is prohibited?

**IT IS SO ORDERED.**

DATED this 1st day of June, 2023.

                                                        /s/ Karin J. Immergut  
                                                        Karin J. Immergut  
                                                        United States District Judge