Jessica A. Skelton, OSB #102714
jessica.skelton@pacificalawgroup.com
PACIFICA LAW GROUP LLP
1191 2nd Avenue, Suite 2000
Seattle, WA 98101-3404
206-245-1700

*Attorney for Intervenor-Defendant*
*Oregon Alliance for Gun Safety*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| OREGON FIREARMS FEDERATION, INC., et al.,<br><br>            Plaintiffs,<br>       v.<br><br>TINA KOTEK, et al.,<br><br>            Defendants,<br><br>      and<br><br>OREGON ALLIANCE FOR GUN SAFETY,<br><br>            Intervenor-Defendant. | Case No. 2:22-cv-01815-IM *(Lead Case)*<br>Case No. 3:22-cv-01859-IM *(Trailing Case)*<br>Case No. 3:22-cv-01862-IM *(Trailing Case)*<br>Case No. 3:22-cv-01869-IM *(Trailing Case)*<br><br> CONSOLIDATED CASES<br><br>INTERVENOR-DEFENDANT OREGON ALLIANCE FOR GUN SAFETY'S NOTICE OF SUPPLEMENTAL AUTHORITY |
| MARK FITZ, et al.,<br><br>            Plaintiffs,<br>       v.<br><br>ELLEN F. ROSENBLUM, et al.,<br><br>            Defendants. | |
| KATERINA B. EYRE, et al.,<br><br>            Plaintiffs,<br>       v.<br><br>ELLEN F. ROSENBLUM, et al.,<br><br>            Defendants, | |

INTERVENOR-DEF. OREGON ALLIANCE FOR GUN
SAFETY'S NOTICE OF SUPPLEMENTAL AUTHORITY - i

|   |
|---|
| and<br><br>OREGON ALLIANCE FOR GUN SAFETY,<br><br>                      Intervenor-Defendant. |
| DANIEL AZZOPARDI, et al.,<br><br>                      Plaintiffs,<br>    v.<br><br>ELLEN F. ROSENBLUM, et al.,<br><br>                      Defendants. |

# NOTICE

Intervenor-Defendant Oregon Alliance for Gun Safety (the "Alliance") respectfully submits this notice to bring the Court's attention to the attached decision in *United States v. Alaniz*, --- F.4th ----, No. 22-30141, 2023 WL 3961124 (9th Cir. June 13, 2023). The decision holds that "United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(b)(1), which provides for an enhancement of the Guidelines calculation if a defendant possessed a dangerous weapon at the time of a felony drug offense, is constitutional under the Second Amendment." *Id.* at *1. This supplemental authority is submitted in support of the Alliance's Trial Brief, ECF 176.

DATED this 13th day of June, 2023.

PACIFICA LAW GROUP LLP

*s/ Zachary J. Pekelis*
Jessica A. Skelton, OSB #102714
Zachary J. Pekelis, *Pro Hac Vice*
Kai A. Smith, *Pro Hac Vice*
W. Scott Ferron, *Pro Hac Vice*

*Attorneys for Intervenor-Defendant
Oregon Alliance for Gun Safety*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of June, 2023, I electronically filed the foregoing document with the Clerk of the United States District Court using the CM/ECF system which will send notification of such filing to all parties who are registered with the CM/ECF system.

DATED this 13th day of June, 2023.

---
Sydney Henderson

2023 WL 3961124
Only the Westlaw citation is currently available.
United States Court of Appeals, Ninth Circuit.

UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
MIGUEL MICHAEL ALANIZ, Defendant-Appellant.

No. 22-30141
|
Argued and Submitted March 28, 2023 Seattle, Washington
|
Filed June 13, 2023

### SUMMARY[**]

#### Criminal Law

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

*1 The panel affirmed a sentence imposed in a case that required the panel to consider whether U.S.S.G. § 2D1.1(b)(1), which provides for an enhancement of the Guidelines calculation if a defendant possessed a dangerous weapon at the time of a felony drug offense, is constitutional under the Second Amendment following *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

Applying the two-part test adopted by *Bruen*, the panel assumed, without deciding, that step one is met—when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. At step two, however, the panel found § 2D1.1(b)(1) constitutional because it clearly comports with a history and tradition of regulating the possession of firearms during the commission of felonies involving a risk of violence.

D.C. No. 1:21-cr-00243-BLW-1

Appeal from the United States District Court for the District of Idaho

B. Lynn Winmill, Chief District Judge, Presiding

**Attorneys and Law Firms**

COUNSEL William M. Pope (argued), Assistant Federal Public Defender; Federal Public Defender's Office; Spokane, Washington; Nicole Owens, Assistant Federal Public Defender; Federal Public Defender's Office; Boise, Idaho; for Defendant-Appellant.

Syrena C. Hargrove (argued) and Christopher A. Booker, Assistant United States Attorneys; Joshua D. Hurwit, United States Attorney, District of Idaho; Office of the United States Attorney; Boise, Idaho; for Plaintiff-Appellee.

Before: Jacqueline H. Nguyen and Andrew D. Hurwitz, Circuit Judges, and Philip S. Gutierrez,[*] Chief District Judge.

[*] The Honorable Philip S. Gutierrez, Chief United States District Judge for the Central District of California, sitting by designation.

OPINION

GUTIERREZ, Chief District Judge:

**OPINION**

This case requires us to consider whether United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(b)(1), which provides for an enhancement of the Guidelines calculation if a defendant possessed a dangerous weapon at the time of a felony drug offense, is constitutional under the Second Amendment following *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). We conclude that, in light of a well-established historical tradition of regulation, Miguel Michael Alaniz did not have the right to "keep and bear arms" during and in close proximity to his criminal activities.

**BACKGROUND**

**I. Arrest and Conviction**

Alaniz was the subject of a year-long investigation by the Idaho State Police for drug trafficking and distribution. On three occasions in 2021, Alaniz sold cocaine out of his home and vehicle to a confidential informant. After the third transaction, officers stopped Alaniz's car and arrested him. A search of the car revealed a loaded handgun near the center console.

Shortly thereafter, the police obtained a warrant to search Alaniz's home. The search uncovered forty-seven grams of cocaine inside a pantry and safe in the kitchen and scales with white powdery residue in the bedroom. Officers also seized twelve additional firearms. Eleven of them, including at least one AR-15 rifle and one AK-47 rifle, were in the bedroom; a hunting rifle was hidden behind the living room couch.

After a grand jury indicted Alaniz, he pleaded guilty, without a plea agreement, to three counts of cocaine distribution and one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

**II. Sentencing**

U.S.S.G. § 2D1.1 governs sentencing for felony drug trafficking and provides offense-specific enhancements and departures. Alaniz's presentence report recommended that the district court apply both § 2D1.1(b)(1)'s dangerous weapon enhancement and a downward departure under the "safety valve" in § 2D1.1(b)(18). Section 2D1.1(b)(1) enhances a defendant's Guidelines sentence by two levels "[i]f a dangerous weapon (including a firearm) was possessed" and present during the crime, "unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1) & cmt. n.11(A); *see also* *United States v. Nelson*, 222 F.3d 545, 550 (9th Cir. 2000) ("Section 2D1.1(b)(1) applies 'if the weapon was present....' " (citation omitted)). But under § 2D1.1(b)(18), a two-level downward departure applies if the defendant did not "possess a firearm ... in connection with the offense." U.S.S.G. § 5C1.2(a)(2).

**\*2** Despite their seeming facial overlap, § 2D1.1(b)(1) and § 2D1.1(b)(18) require distinct inquires. See *Nelson*, 222 F.3d at 549–51. Under § 2D1.1(b)(1), the government simply bears the burden of proving that the weapon was possessed at the time of the offense. See *id.* at 551 n.3. The enhancement then applies unless the defendant can show it was "clearly improbable" that the weapon was possessed in connection with the offense. See *id.*; U.S.S.G. § 2D1.1(b)(1) cmt. n.11(A). But to invoke the "safety valve" in § 2D1.1(b)(18), the defendant has a lower burden, and must only show by a preponderance that a dangerous weapon was not used in connection with the crime. See *Nelson*, 222 F.3d at 550.

Both Alaniz and the government objected to the presentence report. To meet its burden under § 2D1.1(b)(1) and oppose application of § 2D1.1(b)(18), the government offered evidence that Alaniz possessed the seized firearms both temporally and spatially proximate to his drug trafficking. The government also argued that the number and kind of firearms seized supported a finding that they were used in connection with his criminal activities. Alaniz, however, offered evidence that the guns were used for lawful purposes, such as hunting, and not in connection with his drug crimes. Alaniz also challenged the constitutionality of § 2D1.1(b)(1) under *Bruen*.

At sentencing, the district court concluded that the two-level § 2D1.1(b)(1) enhancement applied but found—albeit deeming it a "close call"—that Alaniz was entitled to safety valve relief under § 2D1.1(b)(18). It also found that § 2D1.1(b)(1) was well-supported by a historical tradition of Second Amendment regulation and rejected Alaniz's constitutional objection. Calculating a total offense level of 15, the court sentenced Alaniz to a below-Guidelines term of 15 months in prison.

## DISCUSSION

On appeal, Alaniz challenges only the constitutionality of U.S.S.G. § 2D1.1(b)(1) under *Bruen*. We have jurisdiction under 28 U.S.C. § 1291 and review the constitutionality of a statute de novo. *See United States v. Vongxay*, 594 F.3d 1111, 1114 (9th Cir. 2010).

**I. The Second Amendment Framework**

The Second Amendment instructs that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Although the Amendment has historical underpinnings in English and early American law, the Supreme Court only began some fifteen years ago, in *District of Columbia v. Heller*, 554 U.S. 570 (2008), to define the contours of the right.

*Heller* analyzed the Amendment's text and history and concluded that it protects the "law-abiding, responsible" citizen's possession of arms for the "lawful purpose of self-defense." 554 U.S. at 576–603, 630, 635; *see also McDonald v. City of Chicago*, 561 U.S. 742, 767–68 (2010) ("[W]e concluded [in *Heller* that] citizens must be permitted to 'use [handguns] for the core lawful purpose of self-defense.' " (quoting *Heller*, 554 U.S. at 630)). After *Heller*, the Courts of Appeals "coalesced around a 'two-step' framework for analyzing Second Amendment challenges." *Bruen*, 142 S. Ct. at 2125, 2127 n.4 (collecting cases); *see also United States v. Chovan*, 735 F.3d 1127, 1136–37 (9th Cir. 2013) (adopting framework). Under that framework, we first looked to history to determine "whether the challenged law burdens conduct protected by the Second Amendment." *See Chovan*, 735 F.3d at 1136. If so, we then applied a means-end scrutiny based on "the extent to which the law burdens the core of the Second Amendment right." *Jackson v. City & County of San Francisco*, 746 F.3d 953, 961 (9th Cir. 2014).

**\*3** This two-step approach, however, was rejected in *Bruen* as "one step too many." 142 S. Ct. at 2127. *Bruen* upheld the step one inquiry used by the Courts of Appeals as "broadly consistent with *Heller*." *Id.* But it rejected the step two means-end analysis, noting that *Heller* instead "demands a test rooted in the Second Amendment's text, as informed by history." *Id.* As the Court explained, *Heller* started with "a 'textual analysis' focused on the 'normal and ordinary' meaning of the Second Amendment's language." *Id.* (quoting *Heller*, 554 U.S. at 576–78). It then "relied on the historical understanding of the Amendment to demark the limits on the exercise of that right," assessing "the lawfulness of [the statute] by scrutinizing whether it comported with history and tradition." *Id.* at 2128.

In keeping with *Heller*'s text-and-history standard, *Bruen* adopted the following two-part test:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, ... the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 49 n.10 (1961)).

*Bruen* step one involves a threshold inquiry. In alignment with *Heller*, it requires a textual analysis, determining whether the challenger is "part of 'the

people' whom the Second Amendment protects," whether the weapon at issue is " 'in common use' today for self-defense," and whether the "proposed course of conduct" falls within the Second Amendment. *Id.* at 2134–35 (citing *Heller*, 554 U.S. at 580, 627).

If the first step is satisfied, we proceed to *Bruen* step two, at which the "Government bears the burden of proving the constitutionality of its actions" by showing that the regulated conduct falls within "the outer bounds of the right to keep and bear arms." *Id.* at 2127, 2130 (citations omitted). Like First Amendment categories of unprotected speech, the outer bounds of the Second Amendment right are determined by analyzing a historical tradition of regulation. *See id.* at 2130. Thus, to carry its burden, the government must produce representative analogues to demonstrate that the challenged law is consistent with a historical tradition of regulation. *Id.* at 2127, 2131–33.

Notably, the analogue required at step two need not be a "historical *twin*." *Id.* at 2133. Rather, we use history to "guide our consideration of modern regulations that were unimaginable at the founding." *See id.* at 2132. *Bruen*, therefore, instructs that the analogue must be "relevantly similar" as judged by "at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132–33 (citing *Heller*, 554 U.S. at 599; *McDonald*, 561 U.S. at 767). In other words, in analyzing a burden on the possession of firearms, we look to "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 2133.

## II. The Constitutionality of U.S.S.G. § 2D1.1(b)(1)

Alaniz argues that U.S.S.G. § 2D1.1(b)(1) violates his Second Amendment right by punishing him for lawfully possessing firearms. We assume, without deciding, that step one of the *Bruen* test is met. But we find § 2D1.1(b)(1) constitutional under step two because it clearly comports with a history and tradition of regulating the possession of firearms during the commission of felonies involving a risk of violence.

**\*4** The government offers on appeal a number of founding-era statutes to prove a historical tradition of sentencing enhancements tied to firearm possession.[1] We conclude that this historical tradition is well-established.[2] Notably, several States enacted laws throughout the 1800s that increased the severity of punishment for certain felonies when weapons were possessed, but not necessarily used, during the commission of the crime. *See, e.g., Commonwealth v. Hope*, 39 Mass. (22 Pick.) 1, 9–10 (1839) (analyzing an 1805 statute that aggravated burglary to the first degree when a defendant possessed a weapon); *People v. Fellinger*, 24 How. Pr. 341, 342 (N.Y. Gen. Term 1862) (same); *State v. Tutt*, 63 Mo. 595, 599 (1876) (same); *United States v. Bernard*, 24 F. Cas. 1131, 1131 (C.C.D.N.J. 1819) (discussing a New Jersey statute that punished the possession and exhibition of a firearm during the robbery of a postal worker). Indeed, *Bruen* itself confirms that the right to keep and bear arms was understood at the Founding to be limited where there was a likelihood of a breach of peace. *See* 142 S. Ct. at 2144–46 (citing *Simpson v. State*, 13 Tenn. 356, 358–61 (1833); *State v. Huntly*, 25 N.C. 418, 421–23 (1843) (per curiam); *O'Neil v. State*, 16 Ala. 65, 67 (1849)).

[1] Alaniz contends that the government's analogues cannot be considered on appeal because they were not raised below. But that is not so. "[I]t is claims that are deemed waived or forfeited, not arguments." *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004). Because the constitutional claim was raised below, we may consider the government's step two arguments and analogues put forward on appeal.

[2] States began in the 1700s to impose harsher punishments for crimes committed with firearms, and the tradition persisted through the Second Founding. *See* Mark Frassetto, Firearms and Weapons Legislation up to the Early 20th Century 99–101 (Jan. 15, 2013) (unpublished manuscript), https://perma.cc/5NNG-7KVH (collecting laws

from the colonial era through the 1800s). Accordingly, we need not reach the question of the proper era from which to draw the historical analogues. *See* Bruen, 142 S. Ct. at 2138 ("[T]here is an ongoing scholarly debate on whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 when defining its scope .... We need not address this issue today ....").

Alaniz argues that the government cannot satisfy the step two inquiry because its analogues are not sufficiently similar to U.S.S.G. § 2D1.1(b)(1). He asserts that in the government's examples, possession was an element of the offense and therefore required proof beyond a reasonable doubt. He also contends that felony drug trafficking presents the same "perceived societal problem," as did smuggling crimes in the founding era, thus, in his view, requiring the government to present a "distinctly similar" historical analogue. *Id.* at 2131.

Alaniz's argument, however, is divorced from both reality and the law. Illegal drug trafficking is a largely modern crime. It is animated by unprecedented contemporary concerns regarding drug abuse and is not closely analogous to founding-era smuggling crimes, which primarily focused on punishing importers who evaded customs duties. *See* Gonzales v. Raich, 545 U.S. 1, 10–13 (2005); *see also* Margarita Mercado Echegaray, Note, *Drug Prohibition in America: Federal Drug Policy and Its Consequences*, 75 Rev. Jur. U. P.R. 1215, 1219 (2006); Aaron T. Knapp, *From Empire to Law: Customs Collection in the American Founding*, 43 Law & Soc. Inquiry 554, 565–66 (2018) (describing the Collection Act of 1789 that created "a customs collection regime" that aimed to "prevent fraud and evasion" through "punishing wrongdoing"). And *Bruen* expressly recognized that "cases implicating unprecedented societal concerns," like the one here, "may require a more nuanced approach." 142 S. Ct. at 2132.

**\*5** Viewing the government's proposed analogues through this lens, we are satisfied that they are "relevantly similar" to U.S.S.G. § 2D1.1(b)(1). *See id*. The analogues show a longstanding tradition of enhancing a defendant's sentence for the increased risk of violence created by mere possession of a firearm during the commission of certain crimes. Drug trafficking fits squarely within that category of crimes. Like burglary or robbery, drug trafficking plainly poses substantial risks of confrontation that can lead to immediate violence. *See* United States v. Zamora, 37 F.3d 531, 533 (9th Cir. 1994) ("[T]he possession of a gun during a drug trafficking offense increases the risk of violence."); Echegaray, *supra* at 1241 (describing additional efforts to regulate illegal drug trafficking to curb related crimes and violence); *see also* § 2D1.1(b)(1) cmt. 11(A) ("The enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons."). Section 2D1.1(b)(1), therefore, imposes a "comparable burden" to the historical analogues and is "comparably justified." *See* Bruen, 142 S. Ct. at 2133.

This historical record assures us that the two-level enhancement here is of a kind that the Founders would have tolerated. *See id.* at 2132. We thus conclude that application of § 2D1.1(b)(1) to Alaniz's sentence is constitutional.

**AFFIRMED.**

Opinion by Chief Judge Gutierrez

**All Citations**

--- F.4th ----, 2023 WL 3961124

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.